## NATIONAL LABOR RELATIONS BOARD v. REYNOLDS CORPORATION.

## REYNOLDS CORPORATION v. NATIONAL LABOR RELATIONS BOARD.

No. 11422.

Circuit Court of Appeals, Fifth Circuit.

May 27, 1946.

A. Norman Somers, Asst. Gen. Counsel, National Labor Relations Board, and Malcolm F. Halliday, Associate Gen. Counsel, N.L.R.B., both of Washington, D. C., and Paul E. Kuelthau, Regional Atty., N.L.R.B., of Atlanta, Ga., for petitioner.

Elmer M. Cunningham and Walter L. Rice, both of Richmond, Va., for respondent.

Before SIBLEY, HUTCHESON, and WALLER, Circuit Judges.

## PER CURIAM.

The National Labor Relations Board has petitioned for a decree enforcing and the Reynolds Corporation asks for one setting aside or modifying an order of the Board dated May 26, 1945, which requires that the Corporation cease and desist from interfering with labor organizations and the bargaining rights of its employees, and take affirmative action by withholding recognition of Workers Welfare Association and the Grievance Committee, by reinstating two discharged employees and making whole as to lost wages them and three others, and by posting for sixty days a prescribed promissory notice in the Navy Ordnance Plant at Milledgeville, Georgia, where during 1944 the wrongful labor practices are found to have occurred.

Besides contentions usual in such cases two are made which seem new. The first is that, since the Board found the Reynolds Corporation was engaged at Milledgeville in the manufacture of ordnance for the United States Government under a contract with the Navy Department, the plant, facilities, equipment, raw materials and finished products being at all times the property of the Navy Department and the Corporation "being compensated by the Navy Department on a cost-plus-fixed-fee basis", the Board has no jurisdiction, or at most a limited jurisdiction to be exercised in a way different from the ordinary. The Board, we take it, did not rest its finding that labor disturbance at this plant would substantially "affect commerce" on the idea that the making and transporting by and for the United States of ammunition to be at once used by the Navy in the prosecution of a war dangerous to the very life of the government is commerce. The prosecution of war rises in nature and importance above mere commerce, and things which interfere with the war effort may more appropriately be dealt with by agencies of the government other than the Board. The Board considered that the commerce which might be affected was the importation of the raw material for making the ammunition. This, however, was imported in the name of and bought with the money of the United States, and as its property, and the question is whether, under these peculiar circumstances, this is the commerce which the Board is commissioned to protect, or whether its commercial aspect is not swallowed up in the war effort which is not commerce. Jurisdiction of the Board is further questioned on the ground that in the statutes authorizing the building and operation of the emergency war plants like that at Milledgeville, it was provided that contracts and arrangements might be made by the Army and Navy Departments without respect to existing laws; and that these Departments in 1942, after conference with the heads of the largest labor unions of the country, including the president of the Union here mainly involved, had formally announced and published a labor policy under which such plants would be operated by contractors, a copy of which was given the Reynolds Corporation and also filed with the Board; and by this document much control over labor conditions in the plants was retained, and in Paragraphs 2 and 3 a control over recognition of an employees' bargaining agent was expressly reserved, and provision for handling grievances and disputes pending the determination of such bargaining agent under approval of the representative of the Army or Navy in charge of operations of the plant was expressly reserved; and by paragraph 8 was also reserved approval of all pay roll costs and.

proposed wage scales at the plants. The Navy, it is contended, had its representative at the Milledgeville Ordnance Plant, and he originated and participated in some of the things which have been condemned by the Board. It is argued that under the contract made with the Reynolds Corporation to operate this plant, and the reservations as to control of labor matters, the Corporation was the employer of the labor in only a technical sense, and the United States was the substantial employer, solely interested in the plant and its product, paying all bills, present and directing operations, and that by the express words of the National Labor Relations Act its provisions do not apply to the United States as an employer. 29 U.S.C.A. § 152(2).

■ The Board upheld rulings of the trial examiner excluding from evidence the contract between the United States and the Reynolds Corporation for the operation of this plant and also the Army and Navy's declaration of labor policy and reservation of power. The latter was offered specially touching the Grievance Committee, condemned by the Board, but also generally as to all matters. Both documents were rejected as irrelevant. We think they ought to be admitted and considered, both on the question of the Board's power to act at all, and also in deciding the merits of the matters involved as unfair labor practices if the Board has power to act. We at this time express no opinion on these matters, desiring that the Board first reconsider fully and decide the facts.

The second novel question is whether the fact findings of the Board, if supported by some evidence, are conclusive (as the Act says) in this constitutionally organized court called on to make a judicial decree, if the court thinks the findings clearly against the evidence as a whole. The contention is not that there is a breach of the guaranty of due process under the Fifth Amendment, but a dismemberment of the judicial power which by Article Three of the Constitution is vested solely in courts. It is said that Congress creates the inferior courts and can withhold jurisdiction from them over such subject matters as it sees fit, but that when jurisdiction is given to make a judi-

cial determination it cannot be given as to the law and withheld as to the truth, because the judicial power described in Article Three is to decide finally "cases" and "controversies", which may and most often do arise about the truth rather than the applicable law. The argument is that any court exercising federal judicial power within a State must have a judge, appointed and having security of tenure and salary as provided in Article Three, and that the judge must have the traditional power either to make or to review the fact findings to the extent of disregarding those made by a master, auditor, or other functionary if clearly erroneous, or if made by a jury by granting a new trial. This question we need consider only if finally found necessary to a decision of this case. We express no opinion upon it now.

■ Another unusual question is raised by pleading and by uncontradicted affidavits that since the petitions were filed in this court the war with the Japanese Empire ended on August 15, 1945, and the next day the operating contract with Reynolds Corporation was restricted to finishing ammunition items already begun, and on November 5, 1945, the work had fully ceased, the contract was terminated, the plant was completely and finally surrendered to the Navy, and the Reynolds Corporation had retired from business, its only business having been the operation of two such plants in Georgia. It is manifest that no notice can now be posted by Reynolds Corporation at the Milledgeville Plant as ordered, and that the cease and desist parts of the order have nothing to operate on, and no person can be benefitted by them, for there are no longer any employees at this plant or any other plant operated by Reynolds Corporation. It is true that ordinarily enforcement of the Board's orders may be decreed though the employer has gone out of business, where there may be a successor who would be a privy bound by the order. Southport Co. v. National Labor Relations Board, 315 U.S. 100, 106, 62 S.Ct. 452, 86 L.Ed. 718. Here the business has permanently ceased. The plant has gone back to the Navy, which always owned it. If the Navy should by chance

operate it itself, the Board's orders, new or old, would be without effect. If sold or leased to others, the purchaser or lessee would not be a privy of Reynolds Corporation. There is no probability that the Corporation will again operate the plant. It would be futile to try a hotly contested case for the purpose of making an inoperative decree.

■■ But while the most of the order deals with things that cannot be carried out, the part that orders payment to five discharged employees can be. Yet as to that it is said the payment will be borne by the United States, and not the Reynolds Corporation. This brings up the question whether it would really further the true policy of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., assuming that it is applicable, to make the United States pay for what its contractor did in time of war and under the circumstances as found by the Board.* It is to be borne in mind that the constitutionally permissible order for back pay is not made to vindicate any private right of the discharged employee, but only to vindicate the law against one who has broken it. Where it is doubtful, as it seems to be here, whether the United States or the Corporation is the substantial employer, and where in some respects the Navy instigated and approved what the Corporation did, and where the whole operation is at an end, the Board might well conclude that it is not now a case for such vindication. The case was apparently considered by the Board as an ordinary labor practices case, the evidence as to the exact status of the Corporation was ruled out, and the suggestions and public utterances of the Naval officer in charge were not given even palliating effect. We think the Board ought to receive the evidence of the contract between the Navy and the Corporation, and of the formal statement of the Army-Navy's labor policy and powers, agreed to by the principal labor leaders, and thus put them into this record. We think also it was error to exclude the evidence offered by the Corporation on the issue of discriminatory discharges to the effect that during the critical months among nearly 2,000 employees there had been 162 discharges, and of these discharged employees 21 had been by the Steelworkers Union since identified as belonging to it, 12 by the rival Workers Welfare Association as belonging to it, and the remainder not identified as belonging to any union. All these allegedly discriminatory discharges were by the dischargers testified to have been for lawful cause. The contention was that they testified falsely and acted from a labor bias motive, and to rebut that inference it was proper to make the general showing offered; just as it has often been held on the other hand that it may be shown that all discharges made were of active union adherents, while non-union employees did like things and were not discharged.

We retain the case upon our docket. We direct that with convenient speed the evidence which we have held was improperly excluded be received by the Board, and that it likewise take evidence touching the present status of the Milledgeville Plant and the Reynolds Corporation, and certify all said evidence to this court. The Board may reconsider and modify all its findings in the light of all the evidence and make new findings if it so desires; and may make recommendations as to the modification or setting aside of its original order; and may reconsider its determination, under all the present circumstances, to seek enforcement.

It it so ordered.

---

* Compare Southern Steamship Co. v. National Labor Relations Board, 316 U.S. 31, at page 47, 62 S.Ct. 886, 86 L. Ed. 1246.