**NATIONAL LABOR RELATIONS BOARD
v. GRACE CO.**

No. 14107.

United States Court of Appeals
Eighth Circuit.

Sept. 13, 1950.

Somers, Assistant General Counsel, and Frederick U. Reel and Irving M. Herman, attorneys, all of Washington, D. C., on the brief), for petitioner.

Burr S. Stottle, Kansas City, Mo. (Robert J. Ingraham, Kansas City, Mo., on the brief), for respondent.

Clif. Langsdale, Kansas City, Mo. (John J. Manning, Kansas City, Mo., on the brief), for intervener, International Ladies' Garment Workers' Union.

Before SANBORN, JOHNSEN and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The question is whether this court should grant the petition of the National Labor Relations Board for a decree enforcing its order requiring respondent to bargain collectively with the International Ladies' Garment Workers' Union as exclusive representative of production employees of the respondent at its Clinton, Missouri, plant.

The Grace Company, a Missouri corporation, is engaged in the manufacture of children's wearing apparel. At all times during the proceedings before the National Labor Relations Board the company operated two plants, one at Belton and the other at Clinton, Missouri. There were 58 employees at the Belton plant and 53 at the Clinton plant. Matters concerning wages, hours, and working conditions for both plants were determined at Belton where the company maintained its management office. There was little difference in the character of work or in the working conditions at the two plants. There was little or no interchange of employees between the plants, but from the standpoint of management the two plants were operated as one.

On October 7, 1946, the employees of the Grace Company organized the Independent Union of The Grace Company of Clinton and Belton, Missouri, an unaffiliated labor organization, which began collective bargaining negotiations with respondent representing a majority of the employees of both plants. These negotiations continued until November 8, 1946, when respondent and Independent reached an understanding on

Mozart G. Ratner, Acting Assistant General Counsel, National Labor Relations Board, Washington, D. C. (David P. Findling, Associate General Counsel, A. Norman

terms and conditions of employment and reduced their understanding to writing. Because of interlineations and corrections in the written instrument, the parties thought it necessary to prepare a final draft of the agreement in corrected form before signing. This was done, and the agreement was signed by respondent and Independent on November 14, 1946.

On November 13, 1946, the International filed a petition with the Board for certification as bargaining representative of the employees of respondent at its Clinton plant, claiming to represent a majority of the employees at that plant, and alleging that Independent was a company-dominated union. On December 30, 1946, Independent filed a similar petition for certification. claiming to represent a majority of all employees. The petitions for certification were consolidated for hearing, after which, on May 27, 1947, the Board ordered an election at the Clinton plant.

In the consolidated hearing the Board found, over the objections of respondent and Independent, that either a company-wide unit or a plant unit would on the facts before it constitute a proper bargaining unit for the employees, the Board ruling that: "Under these circumstances * * * the determination of the unit should depend, in part, upon the desires of the employees themselves."

The Board did not find that Independent was a company-dominated union, nor did it make any finding concerning the propriety or the validity of the contract signed November 14, 1946, between Independent and respondent, nor that Independent at the time the contract was signed did not represent a majority of the employees at both plants.

At the election International received a majority of the votes of the employees at the Clinton plant. On July 8, 1947, the International was certified by the Board as their appropriate bargaining representative. Following the certification of International, respondent and International agreed upon July 18, 1947, for a meeting for collective bargaining purposes. The meeting was never held.

On July 15, 1947, Independent, in a proceeding in a Missouri State court for a declaratory judgment sustaining the validity of its bargaining agreement, obtained an order temporarily restraining respondent from "renouncing or disclaiming" its contract with Independent. The order commanded respondent to recognize its contract with Independent and to perform all its obligations thereunder pending a hearing on the merits. Respondent took the position that it was bound to obey the order of the State court until vacated. International asserted that the order was void, and that respondent was required by the Board's order of certification to ignore the State court.

On July 24, 1947, respondent filed a motion with the Board to vacate its certification of International because of respondent's contract of November 14, 1946, with Independent and because of the State court's restraining order. The motion was denied on August 11, 1947.

On July 30, 1947, International filed with the Board its charge that respondent was engaged in unfair labor practices by refusing to bargain collectively with International, and on March 15, 1948, the General Counsel of the Board, pursuant to the charges filed by International, instituted proceedings before the Board which resulted in the order of June 21, 1949, which the Board now seeks to enforce.

On December 18, 1947, respondent filed a motion in the State court to dissolve the temporary restraining order because of the Board's certification of International as bargaining representative of the Clinton plant employees. The motion was denied December 20, 1947. In the meantime International had refused a request of respondent to intervene in the State court proceeding for the purpose of dissolving the restraining order. The order was vacated before May 9, 1949, when the proceeding in the State court were dismissed for reasons not appearing in this record.

On February 23, 1950, respondent filed its application with this court for leave to adduce additional evidence before the Board

to show that at all times since its execution the contract with Independent has continued in full force and effect, and that on June 21, 1949, the majority of the employees of the Clinton plant had notified respondent of their desire to be represented by Independent in place of International. The motion was resisted by the Board on the ground that the additional evidence sought to be adduced was immaterial on any question before the court. The motion was denied with leave to respondent to renew it at the hearing on the merits, which respondent did, after amending the motion by a request to adduce additional evidence to show that due to business reasons wholly apart from the issues in the enforcement proceeding operations at its Clinton plant had been discontinued and the plant permanently closed on May 5, 1950. The Board has made no response to the allegations of the amended motion.

### On the Merits.

Respondent resists the petition for enforcement on the grounds that: (1) the Board's certification of International as bargaining representative of the employees at the Clinton plant was, on the facts in this case, arbitrary and unreasonable; (2) the contract between Independent and respondent in force at the time of the representation hearing was a bar to the certification of International; and (3) respondent had not in fact or law refused to bargain with International while restrained by an order of the State court. We are unable to agree with contentions numbered (1) and (2). For reasons stated later in this opinion, the third contention is no longer in the case.

 (1) The question of a proper unit for collective bargaining, whether plant, industry-wide, or craft, is committed to the wide discretion of the Board. The Board's determination of the appropriate unit for collective bargaining purposes will not be disturbed by the courts unless clearly arbitrary and unreasonable. Bussman Mfg. Co. v. National Labor Relations Board, 8 Cir., 111 F.2d 783, 785; National Labor Relations Board v. May Department Stores, 8 Cir., 146 F.2d 66–70, affirmed 326 U.S. 376–380, 66 S.Ct. 203, 90 L.Ed. 145; Pittsburgh Plate

Glass Co. v. National Labor Relations Board, 8 Cir., 113 F.2d 698, 701–702, affirmed 313 U.S. 146, 156–158, 61 S.Ct. 908, 85 L.Ed. 1251; National Labor Relations Board v. Jones & Laughlin Steel Corp., 331 U.S. 416, 422, 67 S.Ct. 1274, 91 L.Ed. 1575. The question before the Board in the certification proceeding was not whether Independent or International should represent all of the employees of respondent at both plants, but whether, where a majority of the employees at the Clinton plant requested a separate representation by International, their request should be granted. The fact that Independent may have been an equally appropriate bargaining representative if a majority in each plant had requested its representation does not make the Board's certification of a separate bargaining representative for the Clinton plant unreasonable or arbitrary.

 (2) The Board has the power to promulgate rules and regulations of general application, designed to effectuate the purpose of the Act as amended. Its policy of requiring collective bargaining agreements to be reduced to writing and signed by the parties before acceptance by the Board as a valid and final completion of the collective bargaining process has been sustained by the Supreme Court. H. J. Heinze Co. v. National Labor Relations Board, 311 U.S. 514, 524, 61 S.Ct. 320, 85 L.Ed. 309. That this policy of the Board reasonably tends to effectuate collective bargaining requirements by requiring definite and certain in place of uncertain agreements which may become the subject of dispute between the parties as to terms is no longer open to question. The Board's rule that the existence of a valid written and signed bargaining agreement between an employer and an appropriate bargaining representative is a bar to a certification proceeding for a different representation, if applicable to the facts in this case, is a procedural rule which the Board in its discretion may apply or waive as the facts of a given case may demand in the interest of stability and fairness in collective bargaining agreements. The Board is not the slave of its rules. There is no merit in this contention.

**(3)** We reject as unsound the Board's ruling that respondent was required to ignore the restraining order issued by the State court. Collective bargaining with International under the Board's order was useless unless it could proceed to agreement and the performance of the agreement when reached. Respondent's effective obedience to the Board's order required its violation of the restraining order of the State court. The Board could not require the respondent to put itself in this position, even if, as we agree, the ultimate dissolution of the restraining order was certain. At least respondent was entitled to a reasonable time in which to secure a modification or dissolution of the State court order.

But it appears that the State court's injunction was dissolved more than one year before the submission of the petition for enforcement in this court and approximately two months before the Board's order commanding respondent to cease and desist in refusing to bargain with International. Respondent is no longer under restraint of the State court's order. The Board's order to cease and desist refusal to bargain is a continuing order valid when made, and a decree of enforcement by this court operates in the future. The question presented on this assignment is moot.

### On The Motion For Leave To Adduce Additional Evidence.

Section 10(e) of the Act, as amended, 29 U.S.C.A. § 160(e), provides: "* * * If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board, * * * the court may order such additional evidence to be taken before the Board * * * and to be made a part of the transcript. The Board may modify its findings as to the facts, or make new findings, by reason of additional evidence so taken and filed, and it shall file such modified or new findings, which, if supported by evidence, shall be conclusive, and shall file its recommenda-

tions, if any, for the modification or setting aside of its original order. * * *"

An application under this section of the Act is addressed to the discretion of the court. National Labor Relations Board v. Indiana & Michigan Electric Co., 318 U.S. 9, 16, 63 S.Ct. 394, 87 L.Ed. 579; Southport Petroleum Co. v. National Labor Relations Board, 315 U.S. 100, 104, 62 S.Ct. 452, 86 L.Ed. 718; National Labor Relations Board v. Jones & Laughlin Steel Corp., supra, 331 U.S. at page 428, 67 S.Ct. 1274, 91 L.Ed. 1575. The application will not be granted unless it satisfactorily appears that the proposed additional evidence is material and that reasonable grounds existed for failure to adduce it at the hearing before the Board. National Labor Relations Board v. May Department Stores, 8 Cir., 154 F.2d 533, 540; National Labor Relations Board v. Blanton Co., 8 Cir., 121 F.2d 564. The materiality of new evidence unavailable at the time of the hearing before the Board will depend upon the terms of the order to be enforced, as well as upon the nature of the new evidence. If the evidence on remand to the Board shows that the Board's order is obviously moot, the court of appeals should deny enforcement. National Labor Relations Board v. Jones & Laughlin Steel Corp., supra.

That a majority of employees at the Clinton plant have decided, since the Board's order certifying International, to desert that union for Independent is not material on the question of enforcement of the Board's order. National Labor Relations Board v. Mexia Textile Mills, Inc., 339 U.S. 563, 70 S.Ct. 826, 833. But if, as respondent alleges, the Clinton plant has been permanently closed since the order of the Board was entered, that fact, when established, presents to the Board and to this court the propriety of an order which cannot be enforced. Neither the Board nor this court may compel the respondent to continue the operation of its Clinton plant. Nor could this court punish for contempt the respondent's failure to do the impossible —to bargain collectively with a bargaining representative which represents no em-

ployees because there are none and can be none in a permanently closed plant. A decree of a court of appeals enforcing an order of the Board is not a formality designed merely to place the court's stamp of approval on an order of the Board valid when made, but which the facts show is now inoperative and impossible to enforce.

In this case the order of the Board required respondent to bargain with International, to post the usual notices, and to notify the Regional Director of the Board of its compliance with the order. If it should appear on remand to the Board that respondent's plant has been permanently closed, an order of enforcement would be of no benefit to International or to the former employees of respondent, nor would it serve in any degree to effectuate the purposes of the Act as amended.

The situation here is to be distinguished from the cases in which although, after the Board's order, the employer has gone out of business, the order is in part possible of enforcement, or in which the employer is succeeded by another bound by the Board's order. Compare National Labor Relations Board v. National Garment Co., 8 Cir., 166 F.2d 233, 239; Southport Petroleum Co. v. National Labor Relations Board, supra.

In National Labor Relations Board v. Caroline Mills, Inc., 5 Cir., 167 F.2d 212, respondent in answer to the Board's petition for enforcement alleged that it had gone out of business and that all employees had been discharged. The court, nevertheless, granted an order of enforcement, but it does not appear that respondent had asked to adduce additional evidence before the Board to prove the facts alleged in its answer. The Board in this case ordered reinstatement of discharged employees with back pay. 71 N.L.R.B., No. 54. The back pay provision was enforceable although respondent had gone out of business. In Loveman, Joseph & Loeb v. National Labor Relations Board, 5 Cir., 146 F.2d 769, the court refused to enforce the Board's order for the reinstatement of an employee where the proof showed the employee was dead. In National Labor Relations Board v. Reynolds Corp., 5 Cir., 155 F.2d 679, 681, 168 F.2d 877, the facts were that the Board's order

to respondent to cease and desist interfering with labor organization and bargaining rights of its employees was entered in May 1945, when respondent was operating a munitions plant under contract with the Navy. In November 1945 the contract with the Navy was terminated, the plant surrendered to the Navy, and respondent retired from business. The court said that it was manifest that the cease and desist parts of the Board's order on the facts stated had nothing to operate on, that no person could be benefitted by them because there were no longer any employees. Enforcement was denied.

■ It is apparent that the status of the Clinton plant may be speedily determined and the Board and this court advised of the facts without prejudice to any of the parties in interest. That this may be done we retain jurisdiction of this proceeding. The Board is directed to grant respondent a hearing upon the question and to report its findings of fact and recommendations, if any, for further proceedings herein.