**NATIONAL LABOR RELATIONS BOARD v. WILLIAMS et al.**

No. 6370.

United States Court of Appeals Fourth Circuit.

Argued March 6, 1952.

Decided April 1, 1952.

Arnold Ordman, Attorney, National Labor Relations Board, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, National Labor Relations Board, Washington, D. C., and Rosanna A. Blake, Atty., National Labor Relations Board, Takoma Park, Md., on the brief), for petitioner.

Isadore S. Bernstein, Columbia, S. C. (Randolph Murdaugh, Hampton, S. C., and Henry H. Edens, Columbia, S. C., on the brief), for respondents.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is a petition by the National Labor Relations Board (hereinafter called the Board) for the enforcement of its order issued against L. J. Williams, doing business as the L. J. Williams Lumber Company, and Ada W. Williams, doing business as the Varnville Wood Products Company, following the usual procedure under section 10 of the National Labor Relations Act, as amended, 61 Stat. 136, 29 U.S.C.A. § 160.

The Board found that the respondents had violated section 8(a)(1) and (5) of the Act, 29 U.S.C.A. § 158(a)(1, 5), by refusing, upon request, to bargain collectively with Plywood and Veneer Workers Local Unions No. 3130 and 3135 of the United Brotherhood of Carpenters and Joiners of America, A. F. of L. (hereinafter called the Union), after the Union had been certified by the Board as the proper exclusive representative of the respondents' employees. The Board also found that the respondents had violated section 8(a)(1) and (3) of the Act, 29 U.S.C.A. § 158(a)(1, 3), by interfering with, restraining, and coercing their employees in the exercise of their rights guaranteed them in Section 7 of the Act, 29 U.S.C.A. § 157, and by discriminating against three employees in particular.

We are called upon to decide (1) whether the Board's determination of the appropriate bargaining unit was reasonable and (2) whether the Board's findings are supported by substantial evidence on the record considered as a whole. We think that both these questions must be answered in the affirmative.

The two respondents both have their principal offices and places of business in Varnville, South Carolina. The Williams Company is engaged in the manufacture of pine lumber, the Varnville Company in hardwood dimension stock. On July 20, 1949, the Union, pursuant to an organizational campaign among respondents' employees, petitioned the Board for certification as the exclusive bargaining representative of the employees of both companies. The respondents opposed the Union's petition on the ground that the employees of the two companies should be regarded as separate bargaining units.

Thereafter, a representation hearing was held and testimony taken as to the operation of the businesses of the respondents. Upon the basis of this testimony, the Board found as follows:

"L. J. Williams is the owner and manager of Williams, and is the general manager of Varnville, which is owned by Ada W. Williams, his wife * * *. Williams' plant consists of three buildings, and Varnville's plant consists of five. All are located on a single tract of land, and, together with their machinery and equipment, are owned by Ada Williams. For his use of the buildings and machinery, L. J. Williams pays his wife rent in the form of fuel, consisting of waste lumber from his plant, for the steam boilers required by both companies. Otherwise there are no sales or exchanges of materials between the companies.

"The two companies share a single office building, as well as a single heat and steam plant. They jointly employ one head bookkeeper and each pays one-third of his salary. The assistant bookkeeper is employed by Williams but spends about 10 percent of his time working for Varnville. The wages of the firemen who fire the boilers and those of the watchman and saw filer are paid by the two companies in equal shares.

"Each company, although under the general supervision of L. J. Williams, is separately directed by a superintendent who has complete charge of all the various operations of that company, including the hire and discharge of its employees. Each superintendent pays the employees under his direction with funds drawn upon a joint account carried by the two companies. The checks, of different colors for each company, are signed by the superintendent and countersigned by the head bookkeeper. Although there is no interchange of employees between the companies, the rates of pay and other conditions of employment in the two concerns are the same.

"In view of the close proximity and single ownership of plants and equipment, and the common overall management of both businesses, together with the joint employment of some employees within the unit, we find that the employees of the two companies may appropriately be joined in a single unit for the purpose of collective bargaining."

Pursuant to this finding, the Board designated the employees of both companies as a single bargaining unit, and directed an election which the Union won by a vote of 60 to 4. Thereupon the Union was duly certified by the Board as the exclusive bargaining agent for the unit.

■ As we stated in National Labor Relations Board v. Clarksburg Publishing Company, 4 Cir., 120 F.2d 976, 980:

"Subsection 9(b) of the Act, 29 U.S. C.A. § 159(b) gives the Board power to determine the appropriate group of employees for the bargaining unit; and a decision of the Board as to the appropriate unit cannot be disturbed unless the Board exercises the power conferred on it in an arbitrary and unreasonable manner."

See, also, Packard Motor Car Company v. National Labor Relations Board, 330 U.S. 485, 491–492, 67 S.Ct. 789, 793, 91 L.Ed. 1040, 1050; May Department Stores Co. v. National Labor Relations Board, 326 U.S. 376, 380, 66 S.Ct. 203, 206, 90 L.Ed. 145, 151.

■ This principle has been left untouched by the 1947 amendments to the Act. See Mueller Brass Company v. National Labor Relations Board, 86 U.S.App.D.C. 153, 180 F.2d 402, 404; National Labor Relations Board v. Continental Oil Company, 10 Cir., 179 F.2d 552, 554–555. In the light of all the evidence we cannot say that the Board's determination of the present bargaining unit was unreasonable and arbitrary.

The respondents, however, urge upon us a change in their operations since the first representation hearing. The Williams plant has been moved to a piece of property owned by Williams in the town of Varnville about three-quarters of a mile from the Varnville plant. At the time of the unfair labor practice hearing before the Board, the move had been practically completed, except that the new plant, pending the completion of its own kilns, was still using the kilns at Varnville. The machinery Williams had been using at the Varnville plant has been moved to the new location.

The respondents contend that this change in operations created separate and distinct units and invalidated the Board's determination. It appears, though, and the Board so found, that the principal purpose of this move was to avoid further legal difficulties with the Wage and Hour Division under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., and to take advantage of certain provisions of the income tax laws. Thus the Board concluded that the separation had no functional basis, especially since employee representatives would still be dealing with L. J. Williams even if sepa-

rate units were designated, and upheld its prior bargaining unit determination. In this conclusion we express agreement.

█ The mere fact that the two operations are located some distance apart, and that the ownership of one of them has been placed in the name of the wife of L. J. Williams does not render a single unit inappropriate. The test is rather whether there is a "unity of interest, common control, dependent operation, sameness in character of work and unity of labor relations." National Labor Relations Board v. Lund, 8 Cir., 103 F.2d 815, 819. See, also, Pittsburgh Plate Glass Company v. National Labor Relations Board, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251; National Labor Relations Board v. West Kentucky Coal Company, 6 Cir., 152 F.2d 198, certiorari denied, 328 U.S. 866, 66 S.Ct. 1372, 90 L. Ed. 1636. We find that these requirements were met with here in full measure.

█ The Board also found that the respondents had violated Section 8(a)(1) of the Act, chiefly by interrogation, surveillance and threats of reprisal, by an attempt to dissuade their employees from voting in the election, and by interference with the Union's efforts to form a bargaining committee. It is not necessary for us to consider each one of these elements in detail. Suffice it to say that the evidence in the record considered as a whole substantially supports the Board's findings. As to respondents' arguments involving the right of non-coercive persuasion of employees, we do not think the conduct here comes within the scope of protection under the First Amendment or under Section 8(c) of the Act. That privilege can in no way be construed as a cloak to hide obviously intimidating conduct. See National Labor Relations Board v. Gate City Cotton Mills, 5 Cir., 167 F.2d 647, 649; Joy Silk Mills v. National Labor Relations Board, 87 U.S. App.D.C. 360, 185 F.2d 732, 739. We think the record here reveals ample evidence of coercive actions played upon a general background of anti-union feeling.

█ We also feel that the evidence substantially supports the Board's findings that the respondents discriminated against the employees Henderson, Miller and Hill, in violation of section 8(a)(1) and (3) of the Act. The discontinuance of Henderson's hauling service and his eviction from a rent-free house appear, in light of all the circumstances, to have been primarily motivated by a hostility to his union activities and were, therefore discriminatory. The discharge of employees Miller and Hill also appears to have had the same motivation, inasmuch as we can find no other valid and convincing reason for such action in the record. Miller, the evidence indicates, had been regarded as an old and especially competent employee, and only began to come into disfavor when Williams learned of his union membership. And, although not entirely free from doubt, the inference the Board drew from the facts that Hill was discharged "to lend an air of legitimacy to the discharge of Miller" appears substantially justified.

█ The respondents' contention that these two men, part of a crew engaged in skidding pine logs at the time, were fired because the timber had begun to run out and it was necessary to reduce the force does not hold up in the light of the general atmosphere of union hostility. While we of course recognize that the right to hire and fire for sound business reasons is still a managerial prerogative, and that union activity is in no event a bar in itself to the discharge of an employee, the presence of an anti-union attitude and the absence of other valid reasons must necessarily lend strong weight to a finding of discrimination. See Eastern Coal Corporation v. National Labor Relations Board, 4 Cir., 176 F.2d 131, 133; North Carolina Finishing Company v. National Labor Relations Board, 4 Cir., 133 F.2d 714, 718.

For the foregoing reasons, the order of the Board requiring the respondents to cease and desist from interfering with the rights guaranteed their employees by section 7 of the Act and affirmatively to bargain with the union upon request, to offer Miller reinstatement with back pay, to make Hill whole for loss of earnings from the date of discharge to the date he rejected an offer of reinstatement, to make Henderson and his riders whole for any losses suffered

by them as a result of respondents' discrimination, to restore Henderson to his rent-free house, if he has been reemployed by respondents, and to post the usual notices, will be enforced in its entirety.

Order enforced.