NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

LIBBEY–OWENS–FORD GLASS COM-
PANY and L – O – F Glass Fibers
Company, Respondents,

and

United Glass and Ceramic Workers
of North America, AFL–CIO,
Intervenor.

No. 7347.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 22, 1957.

Decided March 11, 1957.

**832**

Arnold Ordman, Atty., National Labor Relations Board, Washington, D. C. (Theophil C. Kammholz, Gen. Counsel, Stephen Leonard, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and William J. Avrutis, Atty., National Labor Relations Board, Washington, D. C., on brief), for petitioner.

Louis R. Becker, Washington, D. C. (Edward T. Cheyfitz, Washington, D. C., on brief), for respondents.

Abraham L. Friedman, Newark, N. J. (Samuel L. Rothbard, Newark, N. J., on brief), for United Glass and Ceramic Workers of North America, AFL-CIO, Movant for Intervention.

Before PARKER, Chief Judge, SOBELOFF, Circuit Judge, and HARRY E. WATKINS, District Judge.

PARKER, Chief Judge.

This is a petition to enforce an order of the National Labor Relations Board which found the Libbey-Owens-Ford Glass Company and its subsidiary, L-O-F Glass Fibers Company, hereafter referred to collectively as the employer, guilty of an unfair labor practice in refusing to bargain and which directed them to bargain with local union No. 968, International Brotherhood of Electrical Workers, AFL-CIO, hereafter referred to as IBEW. United Glass and Ceramic Workers of North America, AFL-CIO, hereafter referred to as the Intervenor, was allowed to intervene before the Board and contest the order and has been allowed to intervene, file brief and be heard before this court. The employer admits the refusal to bargain with the local of the IBEW, and the only question before us is whether the local was properly certified by the Board as bargaining representative of a properly constituted bargaining unit of employees. We think that it was.

Prior to May 1954, the intervenor had represented as bargaining agent all of the production and maintenance employees at the employer's plant here involved and had entered into collective bargaining agreements which, in the

absence of action to the contrary, were to be automatically renewed on June 1 of each year. On May 7, 1954 the IBEW local filed a petition with the Board in which it requested certification as bargaining representative of the maintenance department employees. Hearing on this petition was held on June 4, 1954, at which time the IBEW made two alternative requests; first, that the bargaining unit which it was to represent be limited to electricians, instrument electricians and bushing fabricators, and second, that the unit be limited to electricians and instrument electricians alone. On September 3, 1954 the Board entered its decision finding in favor of a bargaining unit composed only of electricians and instrument electricians and one helper, twelve persons in all, and excluding all other employees, and directing that an election be held to determine the wishes of the members of the proposed unit. At the election held on September 24 pursuant to the order, all twelve of the members of the proposed unit voted in favor of the unit and of being represented by the IBEW local as bargaining representative. The local was so certified by the Board on October 4, but the employer refused to recognize or bargain with it and an unfair practice proceeding based on such refusal followed. The basis of the Board's action in setting up the separate bargaining unit composed of electricians and instrument electricians was stated by the Board in a note to its representation order as follows:

"The Petitioner seeks to sever a unit of all maintenance employees from an existing plant-wide production and maintenance unit. The record shows that the maintenance group is composed, in part, of machinists, welders, carpenters, painters, and maintenance men. Moreover, the Federation of Glass, Ceramic and Silica Sand Workers of America, CIO, Intervenor herein, has, since 1952, represented a plant-wide unit of all production and maintenance employees. Under the circumstances, we find that a unit of all maintenance employees is not appropriate. General Textile Mills, Inc., 109 NLRB No. 39. However, in the alternative the Petitioner seeks a unit of electricians and instrument electricians. Approximately 12 electricians and instrument electricians perform the customary duties of their craft under the immediate supervision of the electrical instrument foreman. Although other 'craftsmen' and production employees may bid for jobs as electricians and instrument electricians, and although there is no formal training program for electricians and the instrument electricians are highly skilled, have had previous electrical experience or training before coming to the Employer, and they perform only that work normally performed by their craft. As it is clear from the record that the electricians and the instrument electricians are craftsmen and practitioners of the same allied craft, and as they are sought to be represented by a union which historically and traditionally represents them, we find, contrary to the employer and the Intervenor, that the electricians and the instrument electricians may constitute a separate appropriate unit for collective bargaining purposes. American Potash & Chemical Corporation, 107 NLRB No. 290."

The action of the Board was taken pursuant to section 9(b) of the Labor Management Relations Act, 29 U.S.C. A. § 159(b), the pertinent portion of which is as follows:

"(b) The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit,

**834**

or subdivision thereof: Provided, That the Board shall not * * * (2) decide that any craft unit is inappropriate for such purposes on the ground that a different unit has been established by a prior Board determination, unless a majority of the employees in the proposed craft unit vote against separate representation * * *."

■ It is well settled that the determination of the bargaining unit under this provision, except as limited by the act itself, is a matter resting in the sound discretion of the Board. N. L. R. B. v. Williams Lumber Co., 4 Cir., 195 F.2d 669, 671–672; N. L. R. B. v. Clarksburg Publishing Co., 4 Cir., 120 F.2d 976, 980; Packard Motor Car Co. v. N. L. R. B., 330 U.S. 485, 491–492, 67 S.Ct. 789, 91 L.Ed. 1040; May Department Stores Co. v. N. L. R. B., 326 U.S. 376, 380, 66 S.Ct. 203, 90 L.Ed. 145. Here the only pertinent limitation of the act is that which forbids a craft unit to be held inappropriate on the ground that a different unit has been established by a prior Board determination; and that manifestly does not apply since the Board held the craft unit to be appropriate. The rule was thus stated by us in the Clarksburg Publishing case, supra, and quoted with approval in the Williams Lumber Company case, supra, viz.:

" 'Subsection 9(b) of the Act, 29 U.S.C.A. § 159(b) gives the Board power to determine the appropriate group of employees for the bargaining unit; and a decision of the Board as to the appropriate unit cannot be disturbed unless the Board exercises the power conferred on it in an arbitrary and unreasonable manner.' "

The employer and intervenor contend that the power of the Board was exercised in an arbitrary and unreasonable manner, because they say that the rule laid down by the Board for the exercise of the power in its decision in the case of American Potash & Chemical Co., 107 N.L.R.B. 1418, is unreasonable in providing that "a craft group will be appropriate for severance purposes in cases where a true craft group is sought and where, in addition, the union seeking to represent it is one which traditionally represents that craft." They say, further, that the rule was unreasonably applied in this case because it is said the IBEW was not a union traditionally representing a craft within the meaning of the rule and that no such showing was made with respect to its local No. 968. There is no merit in either of these contentions. The Board pointed out very clearly that its determination was not based upon the criteria laid down in the American Potash case and that the result would have been the same if the rule of that case were ignored. The Board said:

"Before we turn to the basic considerations which underlie the craft severance doctrine as adopted by the Board in the American Potash decision, we deem it essential to pass upon and make clear the precise situation as it applies to the parties in the present proceeding. As we have already indicated, the Union initially sought an election in a unit of maintenance department employees. The Board, consistent with well established precedent, both before and after American Potash, granted severance on a craft basis to a unit of maintenance department employees. The Board, consistent with well established precedent, both before and after American Potash, granted severance on a craft basis to a unit of electricians and instrument electricians, as alternatively urged by the Union, and directed a self-determination election among these employees. It is significant that this disposition of the representation case raised no novel or unusual issues, and that under the Board policy that existed prior to American Potash the result reached

would have been precisely the same. The facts of the representation proceeding here are in no way dissimilar to the literally hundreds of cases decided by the Board prior to its American Potash decision. Under clear precedent in those cases, bargaining units such as that in which the Union was certified here have been held appropriate for craft severance purposes despite a bargaining history on a broader basis. It is therefore clear that regardless of the criteria announced in American Potash, and even in the absence of the specific requirements therein set forth, the contentions of the Respondents in opposition to the self-determination election accorded the craft employees sought by the Union would have been found lacking in merit. That under American Potash the Board requires the petitioning union to be a union which has traditionally and historically represented the craft sought, could not possibly have had any adverse effect on the Respondents, or for that matter on the Intervenor, as it is a requirement that applies only to the Union seeking severance. Consequently, in the precise situation now before us, the Respondents have no actual basis on which to predicate an assertion of prejudice arising from an alleged invalidity of the representation proceeding or the certification resulting therefrom. Neither has the Intervenor. In these circumstances, the position on which the Respondents place principal emphasis is wholly without merit, and we so find."

As application of the rule of the American Potash case was not necessary to the decision of the case here, and as the Board expressly based its decision on grounds other than the criteria of the rule, it is not appropriate for this court to enter into a discussion of the rule. Furthermore, the rule is essentially one of policy for the guidance of Board action; and, where its application does not involve an abuse of discretion as applied to the facts of a particular case, there is no basis upon which the courts may interfere with what the Board has done. There is no such abuse of discretion here and nothing which could be termed arbitrary or unreasonable in the Board's action. The Electrical Workers were skilled employees unquestionably presenting an appropriate unit for severance from other emloyees for the purpose of collective bargaining,[1] and they unquestionably constituted members of a craft entitled to the protection of the statute above quoted. Furthermore, the IBEW, which they chose to represent them, had been repeatedly held by the Board to be an appropriate representative of Electrical Workers. Consolidated Vultee Aircraft Corp., 75 N. L.R.B. 1276, 1278; General Tire & Rub-

1. As said by the Board in the American Potash case:

"In our opinion a true craft unit consists of a distinct and homogeneous group of skilled journeymen craftsmen, working as such, together with their apprentices and/or helpers. To be a 'journeyman craftsman' an individual must have a kind and degree of skill which is normally acquired only by undergoing a substantial period of apprenticeship or comparable training. An excellent rule-of-thumb test of a worker's journeyman standing is the number of years' apprenticeship he has served—the generally accepted standards of which vary from craft to craft. We will, however, recognize an experience equivalent where it is clearly demonstrated to exist. In addition, to meet the requirements for severance under the Board's new rule, we shall require that all craftsmen of the same type in any plant, except those in traditional departmental units, must be included in the unit. By like token, employees who may work in association with the craft but not in the direct line of progression in the craft will be excluded. All the craftsmen included in the unit must be practitioners of the same allied craft. Furthermore, such craftsmen must be primarily engaged in the performance of tasks requiring the exercise of their craft skills."

ber Co., 79 N.L.R.B. 580, 582; Westinghouse Electric Corp., 80 N.L.R.B. 121, 123; Hughes Aircraft Corp., 88 N.L.R.B. 49, 52; General Motors Corp., 94 N.L.R.B. 217, 222; Revenna Arsenal, Inc., 98 N.L.R.B. 1, 4; American Potash & Chemical Co., 107 N.L.R.B. 1418, 1424, 1425. The contention that evidence to that effect was not introduced in the record in this case is frivolous; for the Board in the exercise of its informed discretion could properly take into consideration a matter which it had so often decided. See Fletcher v. Bryan, 4 Cir., 175 F.2d 716, 717; ·Funk v. Commissioner of Internal Revenue, 3 Cir., 163 F.2d 796, 801 and note 6; A. G. Reeves Steel Const. Co. v. Weiss, 6 Cir., 119 F.2d 472, 474. The hypertechnical argument that distinction should be made in this regard between the IBEW and its local is so obviously lacking in merit as not to warrant discussion.

 The addditional point is made that the Board's "contract bar" rule precluded the certification of the IBEW local. That rule is that an existing bargaining agreement will normally bar a petition for redetermination of representatives; but one of the recognized exceptions is that a petition filed before the automatic renewal date of an agreement and otherwise appropriate is not barred. The petition here was filed well in advance of the renewal date of the agreement and, although the alternative proposals were added after that date, they did not seek to establish a larger but a smaller unit of the group originally proposed. In such cases, the Board does not apply the rule. The Rauland Corp., 97 N.L.R.B. 1333, 1334; General Electric X-Ray Corp., 72 N.L.R.B. 1245, 1247, n. 5; Hughes Aircraft Co., 99 N.L.R.B. 1016, 1018, n. 9. Furthermore, the rule is a mere procedural one "which the Board in its discretion may apply or waive as the facts of a given case may demand in the interest of stability and fairness in collective bargaining agreements." N. L. R. B. v. Grace Co., 8 Cir., 184 F.2d

126, 129; Kearney & Trecker Corp. v. N. L. R. B., 7 Cir., 210 F.2d 852, 857, certiorari denied 348 U.S. 824, 75 S. Ct. 38, 99 L.Ed. 649; N. L. R. B. v. Parran, 4 Cir., 237 F.2d 373, 375. As we said in the case last cited, which involved failure to apply another procedural rule of the Board, this was "a matter of policy which would not justify interference on our part in the absence of abuse of discretion". There was manifestly no abuse of discretion here.

The order of the Board will be enforced.

Order enforced.