**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0084n.06
Filed: February 1, 2006

Consolidated Case Nos. 04-2415, 04-2515

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

AMPTECH, INC.,
      *Petitioner/Cross Respondent,*

                                                    Petition for Review and Cross-Application
                        v.                          for Enforcement of an Order of the
                                                    National Labor Relations Board

NATIONAL LABOR RELATIONS BOARD,
      *Respondent/Cross-Petitioner.*

_____/

      Before:  KENNEDY and GIBBONS, Circuit Judges; DONALD, District Judge.[*]

      **Kennedy, J.**  Based on findings by an Administrative Law Judge (ALJ) and a decision

reviewing those findings by a three-member panel of the National Labor Relations Board (NLRB),

Amptech, Inc. (Amptech) was found to have violated the National Labor Relations Act, 29 U.S.C.

§§ 141-169.  Amptech petitions this court for review of several aspects of the NLRB's decision,

arguing that they were not supported by substantial evidence.  The NLRB argues that the decision

was supported by substantial evidence in its entirety.  It cross-petitions for summary affirmance of

the aspects of the decision Amptech does not contest as well as enforcement of the decision as a

whole. For the following reasons, we deny Ampetch's petition and grant the NLRB's cross-petition.

**BACKGROUND**

_____

      [*]The Honorable Bernice Bouie Donald, United States District Judge for the Western
District of Tennessee, sitting by designation.

Amptech manufactures circuit boards in a facility located in Freesoil, Michigan. As of September 1, 2001, Amptech employed 151 workers. Of this number 41 were employed through Manpower, Inc.,[1] and the rest were regular employees. Amptech is owned by two brothers, Jeff Patulski, who is the President of Amptech, and Stacey Patulski, who is the Vice President and Human Resources Director. The physical plant is owned by a separate corporation, which is owned by the two brothers together with the Patulski's mother, Alice Patulski.

In September of 2001, the AFL-CIO (Union) began an organizing drive at Amptech. Amptech agents learned of the organizing effort on September 21, when several employees (including Babcock, Reimann-Ruba, Heard, Renner, and others) signed a handbill in support of the Union and passed it out outside of the plant during a shift change. One of the handbills that was distributed called for an employee organizational meeting on September 23. Over 20 employees attended that meeting.

The next day, Stacey Patulski conducted a meeting with employees were he decried the organizing effort, declared it to be a "personal attack," and warned employees that Amptech would continue "to explore all of [its] options" regarding its future. Following the meeting, several management employees observed known Union supporters and the employees with whom they associated. Employees White and Vallad were known by management to associate with Union organizers or supporters. There were also several smaller mandatory meetings to which known Union supporters were not invited.

---

[1]Testimony in the record indicated that Manpower was used as a means of hiring new employees at Amptech in that employees were brought in as contract workers through Manpower for a trial period. If the employees "worked out" they were offered employment with Amptech, and if they did not, they were let go.

During work, several supervisors and managers talked with employees in an attempt to express their opposition to the Union. Employees Shedd, Stewart, and Zimmer testified that they made their support for the Union known to company managers during those conversations. Stewart also testified that she told Amptech managers that she had worked for a unionized employer in the past.

On September 27, the Union held another meeting. Most known Union supporters attended as well as employees Stewart, Zimmer, Krusniak, and Block. Some management employees and front office personnel also attended to express their opposition to the unionization effort. During the meeting Block and Krusniak made comments favorable to the Union.

On September 28, Amptech laid off 13 permanent employees and 32 Manpower employees. Those permanent employees laid off included Babcock, Heard, Renner, Reimann-Ruba, Block, Krusniak, Shedd, Stewart, Vallad, White, Zimmer, Ely and Schlaud. These employees were all eventually recalled.

The Union asked the NLRB to investigate various violations of federal labor laws that it alleged occurred during this organizing effort. During the investigation, a supervisor, Trudy Thomas gave evidence in the form of an affidavit to the board outlining threats she had made on behalf of Amptech management against Union supporters. According to Thomas' testimony, Stacey Patulski was aware that she had given this affidavit to the board. Shortly after she gave the affidavit in November of 2001, she was moved from her supervisory position in the inventory cage. She was later transferred to the production floor. After she returned from vacation in January of 2002, she was terminated for not giving 100% effort. Thomas had worked for Amptech for seven years and had received awards for her service and her work during that time.

The NLRB found that all of the layoffs were illegal under federal labor laws.  In addition, the board found that the recall from layoffs was conducted in a discriminatory fashion.  Finally, it found that Trudy Thomas' termination was a result of her having given an affidavit to the NLRB.  Amptech contests all of these findings on appeal.  Several other findings of unfair labor practices made by the NLRB are not contested by Amptech on appeal.

## ANALYSIS

A.      Standard of Review

This court reviews the NLRB's legal conclusions de novo. *Mt. Clemens Gen. Hosp. v. NLRB,* 328 F.3d 837, 844 (6th Cir.2003). The Board's findings of fact, however, are upheld "if supported by substantial evidence on the record." *Kamtech, Inc. v. NLRB,* 314 F.3d 800, 807 (6th Cir.2002) (citing NLRA § 10(e) and (f), 29 U.S.C. § 160(e) and (f)).  Substantial evidence encompasses "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938).  Facts are weighed in view of the record as a whole.  NLRA § 10(e), 29 U.S.C. § 160(e); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951).  Under this standard, the reviewing court must defer both to reasonable inferences drawn by the Board from the facts before it and to the Board's assessment of the credibility of witnesses. *Fluor Daniel Inc. v. NLRB,* 332 F.3d 961, 967 (6th Cir. 2003); *Kamtech,* 314 F.3d at 807; *Tony Scott Trucking, Inc. v. NLRB,* 821 F.2d 312, 315 (6th Cir.1987) ("Deference to the Board's factual findings is particularly appropriate where the 'record is fraught with conflicting testimony and essential credibility determinations have been made.' ") (quoting *NLRB v. Nueva Eng'g, Inc.,* 761 F.2d 961, 965 (4th Cir.1985)).  In reviewing the Board's findings, we may not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have

4

made a different choice had the matter been before it de novo." *Universal Camera Corp.,* 340 U.S. at 488; *Indiana Cal-Pro, Inc. v. NLRB,* 863 F.2d 1292, 1297 (6th Cir.1988). The NLRB's findings can be set aside, however, if "the record demonstrates that the Board's decision is not 'justified by a fair estimate of the worth of the testimony of witnesses' or by the Board's 'informed judgment on matters within its special competence or both.' " *V & S ProGalv, Inc. v. NLRB,* 168 F.3d 270, 275 (6th Cir.1999) (quoting *Turnbull Cone Baking Co. of Tenn. v. NLRB,* 778 F.2d 292, 295 (6th Cir.1985)).

B.      Unchallenged findings of the NLRB are entitled to summary affirmance

The NLRB made several findings that Amptech does not challenge in its petition for review. The NLRB determined that Amptech violated federal labor law when it threatened employees with plant closure, job loss, and unspecified retaliation because of their Union activity. The NLRB also determined that Amptech violated federal labor law when it maintained and enforced a broad no-access policy that prohibited individuals other than on-duty employees from being on company grounds, when it maintained broad confidentiality rules prohibiting employees from discussing their wages, and when it solicited employee grievances during the Union drive and impliedly promised to remedy them through non-Union channels. The NLRB also found that Amptech violated federal labor law when it placed an employee on probation due to her Union activity. The NLRB requests summary enforcement of these unchallenged portions of the NLRB order, and under our precedent, we grant that request. *See NLRB v. General Fabrications Corp.*, 222 F.3d 218, 232 (6th Cir. 2000).

C.      The Lay-offs

        1.      Timing and need for layoffs

5

The ALJ made a determination "that the General Counsel has established a prima facie case that the selection of the permanent employees for layoff was motivated in part by the employees' participation in union activities." Joint Appendix (J.A.) at 16. *See also General Fabrications Corp.*, 222 F.3d 218, 226 (6th Cir. 2000) (citing *Wright Line*, 251 N.L.R.B. 1083 (1980) and *NLRB V. Transportation Management Corp.*, 462 U.S. 393, 394-95 (1983)). Because the ALJ determined that a prima facie case had been established, the burden shifted to Amptech "to prove, by a preponderance of the evidence, that it took the action for a legitimate nondiscriminatory business reason and would have done so even in the absence of the unlawful motivation." J.A. at 16. *See also General Fabrications Corp.*, 222 F.3d at 228 (citing *NLRB v. General Sec. Servs. Corp.*, 162 F.3d 427, 442 (6th Cir. 1985). This circuit has indicated that:

> Discriminatory motivation may reasonably be inferred from a variety of factors, such as the company's expressed hostility towards unionization combined with knowledge of the employees' union activities; inconsistencies between the proffered reason for discharge and other actions of the employer; disparate treatment of certain employees compared to other employees with similar work records or offenses; a company's deviation from past practices in implementing the discharge; and proximity in time between the employees' union activities and their discharge.

*General Fabrication Corp.*, 222 F.3d at 228 (citing *W.F. Bolin Co. v. NLRB*, 70 F.3d 863, 871 (6th Cir. 1995). The ALJ found that Amptech failed to meet its burden:

> In this case the evidence is overwhelming that the layoff and the selection of the permanent employees for layoff were discriminatorily motivated. At the outset there had not been any evidence of an impeding layoff prior to the afternoon of the layoff on September 28, 2001 when the layoff was executed by management. The Respondent presented evidence of some slowdown in business occurring in the time period from late August until the September 28 layoff. Connie Patulski testified concerning cancellations and delays of some orders by several customers that were occurring in this time frame. However, she testified that Respondent has 50 regular customers. I have taken judicial notice that the terrorist events of September 11, impacted business generally in the American economy. I note Trudy Thomas' testimony that she was not surprised by the layoff but that she was surprised by the employees who were selected for layoff. I, thus, conclude that there was some

evidence presented which would indicate that a layoff of some kind may have been imminent. However, the Respondent has not demonstrated, that in the absence of the unlawful motivation for the layoff, it would have occurred on September 28, without warning and that it would impact on permanent employees given the fact that several temporary employees were retained while permanent employees were laid off. I further find that Respondent has failed to demonstrate that the permanent employees would have been selected for layoff in the absence of the unlawful motivation. Here, it is apparent that the Respondent laid off employees known or suspected by Respondent to be supporters of the Union in order to rid itself of these employees. I find that it spared Barbara Cornamy from the layoff to conceal its unlawful motive by retaining a leading union adherent. I further find that it added to the mix of union supporters selected for layoff three employees not known to be union supporters in order to conceal its antiunion motivation for the layoff.

J.A. at 16. The NLRB did not appear to address this finding in detail in its decision, but generally affirmed this portion of the ALJ's decision. *See* J.A. at 1 ("The Board has considered the decision and record in light of the exceptions and briefs and has decided to affirm the judge's rulings, findings, and conclusions as discussed below, and to adopt the recommended Order as modified and set forth in full below.").

We hold that these findings are supported by substantial evidence. Although we are sympathetic to the argument made by Amptech that it would have had to lay off some employees due to the downturn in its business, we find that the substantial evidence in the record supports the finding of the ALJ that Amptech did not need to lay off employees when it did and it did not show that it needed to lay off the permanent employees it did, particularly when it kept nine Manpower employees on the payroll after the layoffs. Amptech's keeping nine Manpower employees on the payroll is particularly strong evidence that supports the ALJ's finding on this point under the substantial evidence standard. The further evidence related to the number of hours (including overtime) worked after the layoff and the fact that layoffs were not discussed at

7

meetings prior to Amptech managers' discovery of the Union drive supports the ALJ's finding on this point.

Finally, even if Amptech is correct that it did need to conduct layoffs, and there is significant evidence in the record that it did suffer a downturn in business starting in August, this fact is not enough to undermine the ALJ's finding that Amptech did not prove that it had to engage in layoffs when it did, or lay off the employees that it did. Any error on the ALJ's part in not sufficiently recognizing the extent of the downturn faced by Amptech was, therefore, harmless as the timing of the layoffs and the employees chosen to be laid off, are just as critical to the ALJ's finding of the a violation of federal labor law as the finding that the layoffs should not have taken place at all.

2.      Layoff of individual employees

a.      Employees Heard, Renner, Reimann-Ruba, and Babcock

"[T]o make out a prima facie case, the General Counsel must prove that anti-union animus partially motivated or contributed to the decision to lay off [the employees]." *W.F. Bolin Co. v. NLRB*, 70 F.3d 863, 871 (6th Cir. 1995). Substantial evidence existed in the record to support the Board's finding that these employees were laid off due to their association with the Union. On September 21, Stacey Patulski obtained a copy of a the Union handbill signed by Heard, Renner, Reimann-Ruba and Babcock. This evidence in combination with the comments made by Stacey Patulski at the September 24th meeting threatening retaliation against Union supporters is sufficient to uphold the NLRB's finding that the dismissal of these employees was, at least in part, due to anti-Union animus.

b.      Employees Shedd, Stewart, and Zimmer

8

Shedd, Stewart, and Zimmer also engaged in a discussion about the Union in the presence of Amptech agents. In addition, Stewart admitted to an agent of Amptech that she had worked in a Union job in the past. Stewart and Zimmer openly complained to President Jeff Patulski about company pay and about Stacey Patulski. Thus, there is evidence in the record that these employees expressed support for the Union and that management was aware of their support. As a result, substantial evidence supports the NLRB's finding that these employees were laid off due to their Union activity, especially given the comments made by Amptech managers threatening Union supporters.

### c. Employees Krusniak and Block

The day before the layoffs, Krusniak, Block, and company managers Fairbanks, Ray, Smalley, and Taylor attended a meeting on the Union. At the meeting, Block testified that she spoke in favor of the Union. Krusniak openly disagreed with manager Ray's assertion that the employees were well treated at this meeting. As a result, managers were aware of these two employees' pro-Union sentiments. Thus, substantial evidence supports the NLRB's finding that they were laid off due to their support of the Union.

### d. Employees White and Vallad

Company officials admitted that they believed that if an employee associated with a Union supporter, that that employee also supported the Union. Company officials also admitted observing which employees associated with Union supporters. White associated with Reimann-Ruba, a known Union supporter. Vallad associated with Union supporters Reimann-Ruba, Heard, Renner, and Cromany. As a result, substantial evidence supports the NLRB's finding that anti-Union animus played a role in Amptech's decision to lay off these two employees.

9

e.      Employees Ely and Schlaud

Although there was no evidence that either Ely or Schlaud supported the Union, the NLRB argues that the surrounding circumstances also make their layoffs improper. According to the NLRB, Schlaud was a part-time employee laid off to cover-up Amptech's anti-Union bias against Krusniak. The NLRB also argues that Ely was laid off to provide cover for the layoffs of Union supporters Reimann-Ruba, Heard, White, and Shedd because all of those employees worked in the surface-mount department. This theory of laying off certain employees to provide cover for the Union motivated layoffs of other employees is supported by the case law. *Wonder State Mfg. Col. v. NLRB*, 331 F.2d 737, 738 (6th Cir. 1964). *See also Jack August Enterprises, Inc. v. NLRB*, 583 F.2d 575, 578-79 (1st Cir. 1978); *L.J. Williams Lumber Co. v. NLRB*, 195 F.2d 669, 672 (4th Cir. 1952). We find that because substantial evidence supports the NLRB's finding that nine of the eleven employees laid off were laid off because of their Union activity, and because it is not unreasonable for the ALJ to conclude that the layoffs of these final two employees could obfuscate such illegal conduct, the NLRB's findings with respect to these employees are supported by substantial evidence.

D.      Recalls from layoffs

Although Amptech discussed the recall from layoffs in the fact section of its brief, it did not dispute in its brief that the recall from layoffs was done in an unlawful manner. Therefore, we deem Amptech's arguments on this issue waived. *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

E.      Termination of Trudy Thomas

10

If an employer discharges a supervisor because that supervisor provided information to the NLRB about unfair labor practices against employees, the employer violates Title 29 U.S.C. § 158(a)(1). *See NLRB v. Carter Lumber, Inc.*, 507 F.2d 1262 (6th Cir. 1974). Here, substantial evidence supports the NLRB's finding that Trudy Thomas was discharged for providing evidence to the NLRB. There is no dispute that Thomas provided an affidavit to the NLRB. There is a dispute, however, concerning whether agents of Amptech knew that she had done so. Thomas testified that she had told the Patulskis in October that she had given the affidavit. They deny ever being told. The ALJ and the NLRB obviously chose to credit Thomas' testimony over that of the Patulskis. The NLRB's credibility determinations may not be disturbed "unless they are inherently unreasonable or self-contradictory." *Thomas Indus. Inc. v. NLRB*, 687 F.2d 863, 866 (6th Cir. 1982) (rejected on other grounds). The NLRB's credibility determination, in this case, is neither inherently unreasonable, nor is it self-contradictory.

The NLRB also determined that the reason Thomas was given for her discharge, that she had not contributed to the company, was a pretextual reason for her termination. The NLRB's finding was supported by the evidence that Thomas had never received a negative evaluation and had been lauded for her work with an employee of the month award and an "extra effort" award over her seven years with the company. Thus, this finding that the reason proffered for Thomas' termination was pretextual was supported by substantial evidence.

Although Thomas was not discharged until three months after giving her affidavit to the NLRB, the pretextual reason for her termination, the fact that she provided an affidavit to the NLRB and that agents of Amptech were aware that she had done so, and the other general anti-

11

Union activities of Amptech all provide sufficient support for this court to uphold the NLRB's determination on this point as being supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, we **DENY** the petition for review and **GRANT** the NLRB's cross-petition.