## NATIONAL LABOR RELATIONS BOARD v. DIXON.
### No. 14147.

United States Court of Appeals
Eighth Circuit.
Oct. 24, 1950.

Glenn L. Moller, Attorney, National Labor Relations Board, St. Louis, Mo. (David P. Findling, Associate General Counsel, A. Norman Somers, Assistant General Counsel, and Arnold Ordman and Rosanna A. Blake, Attorneys, National Labor Relations Board, all of Washington, D. C., on the brief) for petitioner.

No appearance or brief for respondent.

Before SANBORN and THOMAS, Circuit Judges, and DEWEY, District Judge.

SANBORN, Circuit Judge.

The National Labor Relations Board, upon findings that the respondent had engaged in unfair labor practices within the meaning of § 8(a) (1) and (3) of the National Labor Relations Act, as amended by the Labor Management Relations Act 1947, 61 Stat. 136, 29 U.S.C.A. § 151 et seq., on March 16, 1949, ordered the respondent to cease and desist from such practices; to reinstate and reimburse for loss of pay three employees whom the Board found had been discriminatorily laid off; to reimburse for loss of pay six employees whom the Board found had been discriminatorily laid off temporarily; and to post the usual notices of compliance. The Board, pursuant to § 10(e) of the National Labor Relations Act, as amended, has petitioned this Court for enforcement of the Board's order.

The respondent has filed an answer to the Board's petition, asserting (1) that the Board had no jurisdiction over respondent because he was not engaged in interstate commerce; (2) that the Board's findings and order are without adequate evidentiary or legal support; and (3) that the subject matter of the order has become moot and enforcement of the order impossible because the respondent, prior to March

16, 1949, when the order was made, had finally and completely gone out of business.

An affidavit of the respondent attached to his answer states that he was formerly engaged in business at 3523 Prospect Avenue, Kansas City, Missouri, where he employed between 25 and 30 men in the business of manufacturing automobile house trailers; that on June 30, 1948, the building which he occupied under a month to month lease and his tools and equipment were damaged by fire; that the owners of the building terminated the lease, and he was forced to vacate the premises on September 1, 1948; that he stored his tools and equipment in Kansas City until December 1, 1948, when he completely liquidated the business and has not been engaged in any manufacturing of any kind since that date, has had no employees, no plant at which to post notices, and no positions to which he could reinstate any former employees. The respondent in his affidavit states that immediate notice of his cessation of business was given to the Board.

An affidavit of Harry H. Hall, the respondent's attorney, also attached to the answer, states that he notified the representatives of the Board "when respondent ceased his business operations on or about December 1, 1948," and that, when he (the attorney) received a copy of the Board's order, he again notified the Board, by letter dated March 28, 1949, that the respondent had ceased all business operations and had no place of business where notices could be posted or employees could be reinstated, and asked suggestions "as to the proper manner of terminating this case."

The stipulation of facts, which is made a part of the record in the proceedings before the Board, shows that during the year 1947 the respondent was manufacturing house trailers at Kansas City, Missouri; that ten per cent of the raw materials used by him came from points outside of Missouri, and that about twenty-five per cent of his finished house trailers were sold to dealers in other states. While respondent's business was small, the Board had jurisdiction of the proceedings. National Labor Relations Board v. Fainblatt, 306 U.S. 601, 606–607, 307 U.S. 609, 59 S.Ct. 668, 83 L.Ed. 1014; J. L. Brandeis & Sons v. National Labor Relations Board, 8 Cir., 142 F.2d 977, 980.

The evidence upon which the Board based its findings tended to prove that the respondent interrogated his employees about their union affiliations during an organizational campaign, and that, on the day after nine of them had attended a meeting of a union seeking to organize the plant, all of the nine were laid off. The evidence of the respondent, on the other hand, indicates that he had no interest in, and made no inquiries about, the employees' union affiliations, did nothing to encourage or discourage their joining a union, and that the nine employees who were laid off immediately after attending a union meeting were not laid off for that reason, but because of a shortage of essential raw material. The findings of the Board, however, are not without adequate evidentiary support. See and compare, National Labor Relations Board v. Minnesota Mining & Manufacturing Co., 8 Cir., 179 F.2d 323, 326.

The only troublesome question presented is that raised by the respondent's assertion and showing that on December 1, 1948, he had completely ceased the business in which he was formerly engaged, and thereafter had no plant, no manufacturing business, and no employees. It is apparent that for this Court to grant enforcement of an order of the Board requiring an employer to do what he is utterly incapable of doing would serve no useful purpose and would do the Board and the Court no good. We gave consideration to this same problem recently in National Labor Relations Board v. Grace Co., 8 Cir., 184 F.2d 126. In that case the Board's order was in every respect unenforceable if the employer had permanently closed its plant, as it claimed to have done. Moreover, in that case the employer had asked this Court to order the Board to take additional testimony to substantiate the employer's claim that it had ceased operations. We concluded that the proper course to pursue was to retain jurisdiction of the Board's petition for the enforcement of its order, and to direct the Board to grant the employer a hearing upon the question of the alleged cessation of business, and there-

after to report its (the Board's) findings and recommendations.

In the Grace Company case the rights of employees to reimbursement for loss of wages were not involved. In the instant case such rights are involved. In the Grace Company case a motion was made for the taking of additional evidence to substantiate the assertion that the employer had ceased business. No such motion has been made in this case. In fact, the respondent has filed no brief and presented no argument in support of any of the assertions contained in his answer. It is at least doubtful whether the mere filing of an answer to the Board's petition for enforcement is enough to require a review by this Court of the proceedings before the Board. We have, nevertheless, reviewed the record.

Our conclusion is that, under the circumstances of this case, the Board is entitled to have its petition granted. The respondent cannot, of course, be required to do the impossible. The extent to which compliance with the order of the Board presently may be exacted can, we think, properly be left to the Board. Compare, National Labor Relations Board v. National Garment Co., 8 Cir., 166 F.2d 233, 239.

The petition of the Board for enforcement of its order is granted.