**NATIONAL LABOR RELATIONS BOARD
v. SOMERSET CLASSICS, Inc. et al.**

No. 58, Docket 22081.

United States Court of Appeals
Second Circuit.

Argued Dec. 11, 1951.

Decided Jan. 14, 1952.

Willis S. Ryza, Atty., National Labor Relations Board, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Asso. Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Dominick L. Manoli, Atty., National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

Walter J. Mahoney, of Buffalo, N. Y., and George Moskowitz, of New York City, for respondent Somerset Classics, Inc.

Aaron L. Danzig, of New York City (Nemeroff, Jelline, Danzig & Paley, of New York City, on the brief), for respondent Modern Manufacturing Company, Inc.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

The National Labor Relations Board here seeks enforcement of its order in usual form directing the two respondents Somerset Classics, Inc., and Modern Manufacturing Company, Inc., to cease from refusing to bargain with a union and discriminating against union employees, to reinstate discharged employees, and to make them whole for any loss of pay occasioned by the discrimination against them. The major issue is the substantiality of the evidence to support the Board's findings and conclusions.

Somerset Classics is a garment contractor engaged in the job-lot sewing and completion of ladies' dresses for Modern Manufacturing Company, a garment manufacturer or jobber. The two companies have substantial interconnections. Somerset's officers and directors are David Friedman and his two stepbrothers, Joseph and Max Donner, who are also the three stockholders of Outdoor Frocks, a corporation which owns the Somerset stock. The Outdoor Frocks stock, formerly owned by David's father, Sigmond, was by him transferred to David, David's wife, and the Donners. These are also the minority stockholders of Modern, Sigmond being its majority stockholder and president, while its other officers are David and the Donners. Modern has a main office in New York City, with show rooms in New York, Boston, and Chicago and a plant in Kingston, New York. It purchases and cuts the material, then ships it for sewing to a Friedman affiliate, of which Somerset, located in Rome, New York, is one, and later, upon receipt of the completed garments, sells them to the retailers.

On October 7, 1948, organizers for the International Ladies' Garment Workers Union, A. F. of L., appeared outside the Somerset plant and shortly thereafter began to pass out membership cards for signing by Somerset's employees. The Friedman plants had never previously been organized. Several days later, one of the union officers called Somerset and requested a bargaining conference, a request which was passed on to David Friedman in New York City. It next appears that almost simultaneously (1) the shop forelady called a meeting of all employees and informed them that she was aware of the unionization campaign, (2) Joseph Donner also made a speech regarding the possibility that the plant would close, (3) a cryptic petition testifying to the employees' desire to keep their jobs was circulated and signed, and (4) Modern's shipments of goods to Somerset came to a halt, resulting in Somerset's eventual complete shutdown on October 27. The plant again resumed operations a month later, but with a greatly reduced labor force.

Inevitably the interpretation of these speeches and the forced shutdown are a matter of dispute betwen the Board and the respondents. The former has accepted the view of a number of witnesses before it, that both the forelady and Joseph Donner threatened the possibility of a lockout if the unionization campaign continued to receive the employees' support. The Board in addition concluded that the actual work stoppage, when it came, was not the product of market considerations, as asserted, but rather had been instituted as an economic

sanction against the union's concerted activity. It thus held that these actions by the Somerset and Modern management constituted conduct calculated to interfere with and restrain organization efforts protected by § 7 of the National Labor Relations Act, 29 U.S.C.A. § 157, and therefore amounted to violations of § 8(a)(1) and (3), 29 U.S.C.A. § 158(a)(1) and (3). The Board also found a continuing partial lockout violative of the same sections in the resumption of operations after November 28, 1948, based on the fact that Somerset had instituted discriminatory hiring practices favoring those unattached to the unionization campaign.

■ Respondent Modern, adducing an exculpatory and more innocent explanation of events, attacks these conclusions under a principle of Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456, that the evidence "must do more than create a suspicion of the existence of the fact to be established." But the evidence supporting the Board's conclusions is not so insubstantial. The coincidence of the threatened concerted activity with the decision to eliminate Somerset as a subcontractor, the testimony of a number of the witnesses to the threatening effect of the speeches and to other statements made by the forelady, the precipitate manner of the shutdown, and the rehiring of only 58 per cent of the unionized employees as against 90 per cent of the nonunionized point far too strongly toward the existence of a concerted plan to thwart the union's ambitions for this court to say that such an inference was improperly drawn from unsubstantiating facts. See N. L. R. B. v. E. C. Brown Co., 2 Cir., 184 F.2d 829; N. L. R. B. v. Sandy Hill Iron & Brass Works, 2 Cir., 165 F.2d 660.

■ Respondent Modern also alleges an absence of evidence supporting the Board's conclusion that it was an employer under § 8, and stresses, instead, the evidence of separate corporate identity and policy. We cannot ignore the fact, however, that both corporations were owned and controlled by members of the same family. See N. L. R. B. v. Stowe Spinning Co., 336 U.S. 226,

227, 69 S.Ct. 541, 93 L.Ed. 638. Not only were the affairs of both well known to all within the family group, but the operations of the two plants were closely integrated. Somerset in fact depended entirely on Modern for its work. Moreover, David Friedman, during the illness of his father, managed Modern entirely during the very period when the lockout was in progress. We think the Board's conclusion that the reduced shipments to Somerset were instituted by him as a part of the anti-union campaign sustainable. Thus, substantial evidence supports the mutual responsibility of the two corporations for the acts in question, as recognized in the Board's order. See N. L. R. B. v. Bonita Fruit Co., 5 Cir., 158 F.2d 758.

■■ A further contention of respondents concerns the scope of the reinstatement order. The complaint named eleven individuals as having been subject to discrimination in the rehiring; the order, however, requires reinstatement of all employees not previously taken back. Thus it may be assumed that the charge of discrimination is not adequate to support this portion of the order. N. L. R. B. v. Reliable Newspaper Delivery, Inc., 3 Cir., 187 F.2d 547; N. L. R. B. v. Salant & Salant, Inc., 6 Cir., 183 F.2d 462, 464. But the Board relied upon the trial examiner's finding not of discrimination, but of the continued partial lockout, a violation of § 8(a)(1) and (3) which affects all those not rehired. Its jurisdiction having once been invoked in regard to the initial plant shutdown and measures properly remedial thereto, any unfair labor practices growing out of and related to this form of violation come within the Board's authority. National Licorice Co. v. N. L. R. B., 309 U.S. 350, 369, 60 S.Ct. 569, 84 L.Ed. 799.

■■ We have finally to consider a motion by respondent Somerset, based on its allegations of insolvency and forthcoming dissolution, that the proceedings be remanded to the Board for the taking of additional evidence on the question of the extent to which compliance with the order is possible. It is true that the order holds Somerset to both back pay and reinstatement for the

discharged employees; and failure to reinstate is ground for proceedings in contempt against an employer. N. L. R. B. v. Acme Air Appliance Co., 2 Cir., 117 F.2d 417, 421. But an employer cannot be forced to do the impossible; if the Board so requires overlooking changed circumstances, their effect may be tested before this court on review of a contempt order. N. L. R. B. v. New York Merchandise Co., 2 Cir., 134 F.2d 949. As yet the amount of the back pay awards has not been settled by the Board. Under the circumstances an enforcement decree should be entered despite an employer's efforts to resist it on the ground that he has gone out of business. The extent to which compliance is possible by satisfying the awards out of the remaining assets is a matter more properly to come before the Board upon the fixing of the awards than before us now on affidavits alleging only that the corporation is "insolvent" and "without any funds." N. L. R. B. v. National Garment Co., 8 Cir., 166 F.2d 233, certiorari denied National Garment Co. v. N. L. R. B., 334 U.S. 845, 68 S.Ct. 1513, 92 L.Ed. 1768; N. L. R. B. v. Dixon, 8 Cir., 184 F.2d 521. Since, therefore, the new evidence sought to be adduced is material only on the question of compliance, an issue not yet before us, and is not material on the correctness of the order itself at the time of its issuance, N. L. R. B. v. Grace Co., 8 Cir., 184 F.2d 126, is inapposite. The motion must be denied.

Enforcement granted.