## LEONARD et al. v. NATIONAL LABOR RELATIONS BOARD.

## NATIONAL LABOR RELATIONS BOARD v. LEONARD et al.

### No. 13557.

United States Court of Appeals
Ninth Circuit.

June 23, 1953.

St. Sure & Moore, Oakland, Cal., Christopher W. Hoey, New York City (George O. Bahrs, San Francisco, Cal., of counsel), for petitioners.

Carroll & Davis, San Francisco, Cal., for Master Furniture Guild, as amicus curiae.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Bernard Dunau and Harvey B. Diamond, Attys., N. L. R. B., Washington, D. C., for respondent.

Before DENMAN, Chief Judge, and ORR and POPE, Circuit Judges.

DENMAN, Chief Judge.

Leonard and other retailers dealing in furniture in an employer unit association, hereafter the Dealers, petition us to set aside an order of the National Labor Relations Board, hereafter the Board. The present Board order now attacked by the Dealers holds a violation of the Taft-Hartley Act, 29 U.S.C.A. § 151 et seq., a temporary lockout from their stores of employees during a pending labor dispute. The dispute has been settled and the question before us is the validity of the Board's order for back pay during the period of the lockout.

The question of the validity of the temporary lockout had been referred by us to the Board in the case of the same title, and based upon the same facts, 9 Cir., 197 F.2d 435. There we gave an extended consideration of the legislative history of the Taft-Hartley Act's provision concerning lockouts and the provisions themselves. What we there stated is to be deemed stated here.

The pertinent facts are that the single union of all the employees of the eleven Dealers was engaged in active negotiations with all the Dealers as a unit for an amend-

ment of an existing agreement between them as to wages and conditions of employment. While the negotiations were pending, the union, by a vote of the employees of all the firms of the Dealers' unit, had called a strike, which followed, of the employees of one of the members of the Dealers, the Union Furniture Company. The latter company at the time the strike was called was complying with all the provisions of the then existing agreement.

The union leader in charge of the strike called it on the particular dealer as the beginning of an announced "whipsawing process" against one after another of the remaining ten, which well could result in strikes against all the Dealers.

The effect of such a recurrent whipsawing process is obvious. No one of the ten remaining dealers could know whether or not its store was next to have its employees sawed off in the continued whipping. Hence none could feel it safe to take orders from its customers on which they would be embarrassed by non-deliveries to them. Likewise, no dealer was safe in placing orders for furniture with the manufacturers, which well might find no employee to unload it in their stores, or if so delivered to the stores it would lie as depreciating overstocked inventories.

To meet this powerful and effective economic coercion by all their employees, the ten remaining Dealers temporarily locked them out though retaining them on their payrolls—but as not working and earning pay—and treating them as employees with protection as to seniority and other benefits when the dispute was settled.

The Board in justifying its holding a temporary layoff in the circumstances violates the Taft-Hartley Act completely ignores the effect of the whipsawing process. It treated the question we referred to it as if the whipsawing factor did not exist and the only fact to be considered was the single strike at one of the stores, stating:

> "As we read the Court's opinion, the sole question before us for consideration at this time is whether the lockout by all the Dealers in this case was justifiable as a use of economic power to offset the Union's economic action

in calling a strike against Union Furniture."

In so ignoring the above effects of the whipsawing process, involving successive strikes against employers not knowing the succession, it reverses its position taken before us in the former case on the same facts, in a manner resembling what is known to athletes as "the aerial whirl backflop." It there stated the law to be that "An employer faced with a threatened strike against himself may *lawfully lock out* employees if his motive in doing so is to *protect his own economic* interests." (Emphasis supplied.)

The Board's former contention then proceeded to give its "examples," three of its cases, in which it held the Act permits lockouts. They hold justifiable the lockout to meet exactly the above described injuries caused the employers by the whipsawing process. It will be noted that the first of the Board's cases justifying the lockout was decided in 1943, that is *under the Wagner Act*. These examples are:

> " * * * For example, in Duluth Bottling Association, 48 N.L.R.B. 1335, 1336, 1359–1360, the Board held that where a threatened strike against employers would result in *a spoilage of their materials,* the employers were entitled to guard against such loss by locking out their employees *in anticipation of the strike.* In Betts-Cadillac-Olds, Inc., 96 N.L.R.B. 46; 28 L.R.R.M. 1509, the Board held that the union's refusal to tell employers when the threatened strike would occur warranted the employers in refusing to accept further orders and locking out their employees, since the employer's purpose was to guard against *disappointing customers.*

> "And in International Shoe Co., 93 N.L.R.B. 159, 27 L.R.R.M. 1504, the Board held that an employer faced with the prospect of recurrent work stoppages which made it difficult for him to plan production, was entitled to lock out his employees where his purposes in doing so was *to guard against economic loss.*" (Emphasis supplied.)

In the first of these cases the Board held that the employer's action did not violate section 8(3) of the Wagner Act. In the two following, the employer action was held not violate Section 8(a)(3) or 8(a)(5) of the Taft-Hartley Act. Yet in its decision here the Board holds such action violated both these sections of the latter Act.

As stated by the Fifth Circuit in N. L. R. B. v. Dorsey Trailers, 179 F.2d 589, 592, the Board "is no 'Poo Bah' to loose or bind at will." Congress made it an agency not as a *labor* board—created to aid labor in its struggle against the employer. As shown by its name, Congress created it to be a board concerned with the administration of "labor relations" in which the rights of the employer are to be as jealously guarded as those of the employee. We repeat the gustatory comment, erroneously attributed to Judge Learned Hand, that the Board should be vigilant to see that what was sauce for the goose under the Wagner Act is now sauce for the gander under the Taft-Hartley Act. Capital Service, Inc., v. N.L.R.B., 9 Cir., 204 F.2d 848, 853.

Not only has the Board avoided the question we referred to it but even more significantly has it ignored the statement of the Senate author of the bill, Senator Taft, in consideration of one of the provisions concerning lockouts, and the purpose of the legislation to create equality in the economic struggle between employer and employee. His statement is:

"Mr. President, the amendment is founded on what I consider to be the basic theory of the entire bill, that is, an attempt to create *equality between the employer and the employee.* If anyone can point to anything in the bill which would impose on the labor union something not imposed upon the employer, certainly I would be in favor of amending it to create equality.

"Men have come to me and said, regarding the question of an injunction for 60 days against a Nation-wide strike, 'You enjoin the strike, but you do not do anything to the employers.' The opposite is the fact. Anyone who will read the section will see that there is a right to enjoin a *lockout* just as well as there is a *right* to enjoin a strike. * * * "[1] (Emphasis supplied.)

The provision to which Senator Taft referred in his statement of creating equality between employer and employee is the proviso to section 208(a) of the Act providing for an injunction by the President against a strike or lockout "affecting an entire industry which imperil the national health and safety." It reads:

"Sec. 208(a) Upon receiving a report from a board of inquiry the President may direct the Attorney General to petition any district court of the United States having jurisdiction of the parties to enjoin such *strike or lockout* or the continuing thereof, and if the court finds that such threatened or actual *strike or lockout*—

"(i) affects an entire industry or a substantial part thereof engaged in trade, commerce, transportation, transmission, or communication among the several States or with foreign nations, or engaged in the production of goods for commerce; and

"(ii) if permitted to occur or to continue, will imperil the national health or safety, it shall have jurisdiction to enjoin any such *strike or lock-out,* or the continuing thereof, and to make such other orders as may be appropriate." (Emphasis supplied.)

It is apparent that the power of a union to initiate a strike which calls out all the employees in an entire or substantial part of an industry is no more than equalled by the power of the employers to lock out temporarily all or a substantial part of such employees. Here, where the economic contest is between eleven Dealers in the furniture industry and all its employees in a single union, the right of the employers to lock out temporarily all the employees

1. Legislative History of the Labor Management Relations Act, 1947, Vol. 2, p. 1206.

is no more than equal to the right of the union of all the employees to call out the employees of one after another of the Dealers in the whipsawing manner above described.

We do not hold that under the Taft-Hartley Act the right to lockout temporarily may be used in all situations existing between employers and employees. The area of its use under that Act is a matter not yet determined by the Supreme Court. However, the Second Circuit has held that an employer may not use a plant shutdown and lockout as a weapon to defeat the efforts of the employees to unionize the plant. In that case it was stated that the shutdown was not caused by market conditions, unlike the instant case where the whipsawing threatened the loss of customers and a cessation of the Dealers' market. N. L. R. B. v. Somerset Classics, Inc., 2 Cir., 193 F.2d 613, certiorari denied, Modern Mfg. Co. v. N. L. R. B., 344 U.S. 816, 73 S.Ct. 10.

■ We agree with the position taken by the Board in the former case involving the same facts that the use of such a temporary lockout as here made by the Dealers to meet the announced whipsawing strikes by the Union does not violate either section 8(a)(3) or section 8(a)(5) of the Taft-Hartley Act.

The petition to set aside the order of the Board and deny its enforcement is granted.

L. Hand, Circuit Judge, dissented.