**BAUSCH & LOMB OPTICAL COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 36, Docket 23053.

United States Court of Appeals, Second Circuit.

Argued Oct. 5, 1954.

Decided Dec. 1, 1954.

Arthur L. Stern, Rochester, N. Y. (Nixon, Hargrave, Devans & Dey and Richard L. Turner, Rochester, N. Y., on the brief), for petitioner.

Melvin Pollack, Atty., National Labor Relations Board, Washington, D. C. (George J. Bott, Gen: Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Frederick U. Reel, Atty., National Labor Relations Board, Washington, D. C., on the brief), for respondent.

Before CLARK, Chief Judge, and L. HAND and FRANK, Circuit Judges.

CLARK, Chief Judge.

Bausch & Lomb Optical Company petitions us to review and set aside an order of the National Labor Relations Board holding it guilty of violating §§ 8(a) (1) and 8(a) (3) of the Labor Management Relations Act, 29 U.S.C. §§ 158(a) (1) and 158(a) (3), and directing it to reinstate four employees with reimbursement of lost pay. The Board found that the petitioner company had illegally interfered with union organization through threats of economic reprisal and coercive interrogation of its employees. It also found that the four employees had been discharged or not reinstated because of their known union affiliations. 107 NLRB No. 157. Petitioner justifies its anti-union statements as an exercise of its free speech prerogative under § 8(c) of the Act, 29 U.S.C. § 158(c), and claims that the personnel separations were warranted by uniform company regulations and by economic necessity. The Board's answer to these allegations contains also a request for enforcement of its order, entered upon recommendation of its Trial Examiner.

Although much of the testimony before the Trial Examiner was conflicting, there was ample evidence for a holding of undue company interference with unionization. Both before and within the 6-months' limitation period of § 10 (b), 29 U.S.C. § 160(b), high-ranking company officials repeatedly threatened that success by the International Association of Machinists in its unionizing campaign would result in curtailment of production and loss of personal vacation and other benefits. On one occasion Plant Manager Walter Sether stated that the union controversy had already resulted in the cancellation of machinery ordered for a new department. In several instances these threats accompanied interrogation concerning the union. Employees were asked about union membership and goals in general, as well as about their own affiliations. Admission of union membership called forth deprecatory responses by company officials. These incidents cannot be dismissed as de minimis, as the company contends, since any expressions of company attitudes, even to small groups of individuals, were likely to be rapidly disseminated around a plant during the struggle of organization.

After the union's defeat in a consent election, petitioner's Vice-President, C. S. Hallauer, publicly congratulated the employees on the failure of the union to achieve recognition. Hallauer's statement is not attributable merely to unusual tactlessness, but is one further example of the pervasiveness of the company's anti-union attitude, which went far beyond a friendly solicitude for the well-being of its workers. The Board could reasonably deduce from all these facts the existence of an "aroma of coercion" which interfered with the employees' rights to choose their own bargaining representative. N. L. R. B. v. Syracuse Color Press, 2 Cir., 209 F.2d 596, 600, certiorari denied Syracuse Color Press v. N. L. R. B., 347 U.S. 966, 74 S.Ct. 777; Precision Fabricators v. N.

L. R. B., 2 Cir., 204 F.2d 567, 569; N. L. R. B. v. Montgomery Ward & Co., 2 Cir., 192 F.2d 160; N. L. R. B. v. Beaver Meadow Creamery, 3 Cir., 215 F.2d 247; N. L. R. B. v. Tennessee Coach Co., 6 Cir., 191 F.2d 546; Joy Silk Mills v. N. L. R. B., 87 U.S.App. D.C. 360, 185 F.2d 732, certiorari denied 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350.

Viewed against this background of pronounced company hostility to unionism, there is justification also for the Board's order with respect to discrimination in the hire and tenure of four Bausch & Lomb employees. It is to be noted that the Trial Examiner exercised care and discrimination in making his findings and recommendations and that he refused to find unfair labor practices in the separation of 41 additional employees named in the general counsel's complaint. And the Board upon review here also accepted his recommendation and ordered dismissal of the complaint as to these employees.

■ The case of Doris Brown is perhaps the clearest of the four now in issue. Although petitioner asserts that she was discharged only for repeated infraction of a company regulation against excessive loitering away from the work bench, the Board could reasonably find that this minor regulation was merely a pretext for the dismissal of an active trustee of the union. There was conflicting testimony as to the discriminatory enforcement of this regulation; the Trial Examiner and the Board were entitled to resolve this conflict in favor of the employee. N. L. R. B. v. Dinion Coil Co., 2 Cir., 201 F.2d 484. Brown was never warned about her loitering until she had stated her allegiance to the union and her belief that it would improve working conditions. Furthermore, Brown was told by Industrial Relations Director Jack Moore that she was a "marked woman" who would have to do just as she was told because of her union activities. Significantly, this testimony remains uncontradicted. We hold that there was substantial evidence

for the Board's finding of discriminatory discharge with respect to Brown. N. L. R. B. v. Vermont Am. Furniture Corp., 2 Cir., 182 F.2d 842; N. L. R. B. v. Beaver Meadow Creamery, supra, 3 Cir., 215 F.2d 247.

■ The facts concerning the discharge of Neil Bernard and Charles McGill are essentially similar, so that their cases may be conveniently considered together. These two employees, respectively the vice-president and the president of the union, and known as such to the company, were workers of superior seniority status and proven ability and versatility. Joint recipients of a $5,200 merit award for a production suggestion, they had wide experience not only as profilers, their last positions with the company, but also as setup men for a variety of other machinery. Petitioner attempted to justify these layoffs by pointing to the undisputed fact of lack of profiling work. This was buttressed by reference to a uniform company layoff policy which stressed ability and seniority, but also provided that worthy employees in one department should not, for lack of work, be allowed to displace workers in other departments. There was substantial, albeit not uncontradicted, evidence from which the Trial Examiner and the Board reasonably concluded that the profilers, alone, did not constitute a department, and that there were other well-paying departmental positions which Bernard and McGill might well have filled in preference to less qualified employees who were retained. We cannot agree with petitioner's contention that McGill's transfer to the tumbling room after profiling work became scarce was sufficient to relieve it of further obligation. This work transfer resulted in a reduction of salary from $80 to $24 a week, and constructively forced McGill to resign. There was further substantial evidence of discriminatory failure to reinstate these men when other employees were hired or rehired. Company policy called for the reinstatement of exceptional workers, and, in addition, Ber-

nard had been told that he would be notified of vacancies as they occurred. Moreover, another profiler, Perkins, who had signed an anti-union petition, was recalled for profiling work. Thus there was sufficient evidence for the Board's finding of discrimination with respect to the hire and tenure of these two men. N. L. R. B. v. Somerset Classics, Inc., 2 Cir., 193 F.2d 613, certiorari denied Modern Mfg. Co. v. N. L. R. B., 344 U.S. 816, 73 S.Ct. 10, 97 L.Ed. 635; N. L. R. B. v. Saxe-Glassman Shoe Corp., 1 Cir., 201 F.2d 238.

■ The Board's case with respect to Myrtle Olson is limited to discrimination in failure to reinstate, the Board having found that she was laid off for justifiable economic cause. Olson was an employee of petitioner for 7½ months; during this time she did a variety of machine jobs before finally working for two months on core insertion. Although only a rank and file member of the union, she attended several union meetings and actively espoused the union's cause. The Trial Examiner and the Board accepted Olson's version of two interviews with Labor Relations Director T. E. MaGuire. In the first of these, which took place immediately after Olson had been notified of her layoff, MaGuire complimented her on her work, telling her that she would not have been dismissed had she been hired before the other girl on her job. MaGuire also asked how she had happened to decide for the union and against the company, strongly intimating that the union would cause many people to suffer because it would force Bausch & Lomb to close down the plant. In the second interview MaGuire severely upbraided Olson as the worst troublemaker in the place, and told her that things might have gone differently with her had she signed the anti-union petition. Despite assurance by Indus-

trial Relations Director Moore that she would be rehired as soon as work was available, Olson was never notified of vacancies. The Trial Examiner found that other employees had been recalled by the company, and that new employees had been taken on for positions which Olson might have fulfilled.

On the whole we think this adequate. It is clear, under familiar agency law, that Moore's statement placed the company under an obligation to recall Olson for any job for which she might reasonably be considered competent. It is at this point that the Board's case is the weakest, for the Trial Examiner's finding that Olson could have performed the jobs for which others were hired was largely inferential. On the other hand, petitioner did not show that the operations required any unusual technical skill. Thus, bearing in mind the special competence of the Trial Examiner and the Board in these matters, the company's general anti-union background, and MaGuire's express castigation of Olson for her union activities, we cannot say that this record does not afford substantial evidence in favor of the finding of discrimination. N. L. R. B. v. Somerset Classics, Inc., supra, 2 Cir., 193 F.2d 613; N. L. R. B. v. Shedd-Brown Mfg. Co., 7 Cir., 213 F.2d 163.

■ The order of the Board is not so unjustifiably broad as to come within the interdiction of N. L. R. B. v. Express Pub. Co., 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930, and May Dept. Stores Co. v. N. L. R. B., 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145. Precision Fabricators v. N. L. R. B., supra, 2 Cir., 204 F.2d 567, 569; N. L. R. B. v. Charles R. Krimm Lumber Co., 2 Cir., 203 F.2d 194, 196.

The petition for review is dismissed, and the Board's request for enforcement of the order is granted.