**BODY & TANK CORP., Petitioner,**
v.
**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 50, Docket 28589.

United States Court of Appeals
Second Circuit.

Argued Oct. 6, 1964.

Decided Dec. 3. 1964.

Harry B. Sale, New York City (Sale & Sale, Robert Sale, New York City, on the brief), for petitioner.

Melvin J. Welles, Atty., NLRB, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Vivian Asplund, Atty., NLRB, of counsel), for respondent.

Sipser, Weinstock & Weinmann, New York City (Richard Dorn, New York City, on the brief), for Local No. 455, International Ass'n of Bridge, Structural and Ornamental Iron Workers, AFL–CIO, amicus curiae.

Before LUMBARD, Chief Judge, and HAYS and ANDERSON, Circuit Judges.

HAYS, Circuit Judge.

Petitioner Body and Tank Corp. asks that an order of the National Labor Relations Board, 144 N.L.R.B. No. 136 (1963), based upon a finding of violation of Section 8(a) (1), (3) and (5) of the National Labor Relations Act [1] be set aside. The Board seeks enforcement of its order.

Petitioner, a manufacturer and distributor of structural steel products, had a collective bargaining agreement with

1. 29 U.S.C. § 158(a) (1), (3) and (5) (1958 & Supp. V, 1964).

Local 455, International Association of Bridge, Structural and Ornamental Iron Workers, AFL–CIO, which terminated on January 31, 1963. Negotiations for a new agreement were carried on during November and January, but on January 31, an issue concerning the vacation clause remained unresolved. The Company proposed to revise the vacation clause to conform the vacation schedule to that in the Union's contract with the Allied Association of Structural Steel Manufacturers while the Union wanted to continue the clause contained in the agreement which had just expired. On Friday, February 1, there were further fruitless efforts at agreement and on Monday, February 4, the Employer excluded the members of the bargaining unit from their jobs.

The first issue for our determination is presented by the conflicting interpretations of the Employer's action in excluding the employees. The Board has found that the Employer locked out the employees, with the intent of forcing them to agree to the proposals of the Employer for a collective agreement. The Petitioner maintains that it merely laid off the men for lack of work.

The record reveals that when the employees applied for unemployment compensation, the Employer stated that their loss of employment was due, not to a layoff, in which case they would have received compensation, but to a "labor dispute." This prevented their getting unemployment benefits.

This admission by the Employer, the evidence of the Employer's repeated assertions "no contract, no work," and of an assurance by the Employer that the employees would be put back on the job the day after the contract was signed, together with the failure of the Employer's evidence to establish any economic necessity for laying off the employees (the employees who were not in the bargaining unit were not laid off) support the Board's view of the Employer's action as constituting a lockout.

We hold that this evidence is sufficient when considered in the background of the record as a whole to support the finding that the employees were locked out by the Employer for the purpose of enhancing its bargaining position. See Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

The Employer's alternative contention, that it locked out the employees because of the threat of a strike, finds no corroboration in the evidence.

The more difficult issue is whether the Board was correct in holding that the Employer violated the Act by resorting to a lockout to further its bargaining position. This is a case of first impression in this circuit. The circuits which have passed on the issue are in disagreement. The Third,[2] Tenth,[3] and District of Columbia[4] Circuits have upheld the Board's position; the Fifth Circuit[5] has rejected it.

In NLRB v. Truck Drivers Union, 353 U.S. 87, 77 S.Ct. 643, 1 L.Ed.2d 676 (1957), the Supreme Court upheld the Board in ruling that an employers' association could use a lockout defensively against a union's whipsawing tactics designed to destroy a multi-employer bargaining unit. In its opinion in the Truck Drivers case the Court stated that it was not "called upon to define the limits of the legitimate use of the lock-

2. Quaker State Oil Ref. Corp. v. NLRB, 270 F.2d 40 (3d Cir.), cert denied, 361 U.S. 917, 80 S.Ct. 261, 4 L.Ed.2d 185 (1959).

3. Utah Plumbing and Heating Contractors Ass'n v. NLRB, 294 F.2d 165 (10th Cir. 1961).

4. Local 374, International Brotherhood of Boilermakers v. NLRB, 331 F.2d 839 (D. C.Cir.1964), cert. granted sub nom. American Shipbuilding Co. v. NLRB, 85 S.Ct. 69 (1964).

5. NLRB v. Dalton Brick and Tile Corp., 301 F.2d 886 (5th Cir. 1962); cf. Leonard v. NLRB, 197 F.2d 435 (9th Cir. 1952), after remand, 205 F.2d 355 (1953); Morand Bros. Beverage Co. v. NLRB, 190 F.2d 576 (7th Cir. 1951), after remand, 204 F.2d 529 (1953).

out" and that it was "unnecessary to pass upon the question whether, as a general proposition, the employer lockout is the corollary of the employees' statutory right to strike." [6] Of the roles of the courts and the Board in respect to the issue of the legality of a lockout in any particular situation the Court said:

> "The ultimate problem is the balancing of the conflicting legitimate interests. The function of striking that balance to effectuate national labor policy is often a difficult and delicate responsibility, which the Congress committed primarily to the National Labor Relations Board, subject to limited judicial review." [7]

The Board argues that the lockout is not the corollary of the strike since the strike is a protected activity under Section 7 [8] and is given a preferred position under Section 13,[9] while the lockout is clearly unlawful in some situations, as, for example, when it is used for the purpose of interfering with unionization. NLRB v. Somerset Classics, Inc., 193 F.2d 613 (2d Cir.), cert. denied sub nom. Modern Mfg. Co. v. NLRB, 344 U.S. 816, 73 S.Ct. 10, 97 L.Ed. 635 (1952).

The Board contends that the lockout engaged in to further the employer's bargaining position is a violation of Section 8(a) (1)[10] and Section 8(a) (3)[11] because it interferes with the right to strike, "blunts" the strike weapon, discourages union activity, and unduly diminishes the union's bargaining power. It "tips the scales in favor of the employer." The Board points out that, to counterbalance the strike weapon, the employer has the right to replace striking employees,[12] and after an impasse to institute unilaterally terms of employment which the employees have rejected.[13] To give the employer in addition the right to a bargaining lockout would be to defeat the Congressional purpose in increasing union bargaining power by statutory protection of the right to strike.

The Board has found that the Employer's conduct also violates Section 8(a) (5).[14] The finding as to Section 8(a) (5) is dependent on the finding as to Sections 8(a) (1) and 8(a) (3). The Board holds, in effect, that an employer who uses in collective negotiations a method which is unlawful because it interferes with and restrains employees and by discrimination discourages union

---

6. 353 U.S. at 93 & n. 19, 77 S.Ct. at 646.

7. 353 U.S. at 96, 77 S.Ct. at 648.

8. 29 U.S.C. § 157:
   "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8 (a) (3)."

9. 29 U.S.C. § 163:
   "Nothing in this subchapter, except as specifically provided for herein, shall be construed so as either to interfere with or impede or diminish in any way the right to strike, or to affect the limitations or qualifications on that right."

10. 29 U.S.C. § 158(a):
    "It shall be an unfair labor practice for an employer—
    "(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;
    *    *    *    *    *
    "(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization:
    *    *    *    *    *
    "(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a)."

11. *Supra* n. 10.

12. NLRB v. Mackay Radio and Tel. Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938).

13. NLRB v. Crompton-Highland Mills, Inc., 337 U.S. 217, 224–225, 69 S.Ct. 960, 93 L.Ed. 1320 (1949) (dictum).

14. *Supra* n. 10.

membership is refusing to bargain collectively as required by the Act.

We cannot say that the Board's interpretation of the statute is not correct or that the Board is in error in applying that statutory interpretation to the facts of the present case. In this area which the Supreme Court has told us is one of delicate balance between conflicting interests, we cannot say that the balance struck by the Board is outside the scope of its competence.

Petition for review denied; enforcement granted.