**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**O'KEEFFE ELECTRIC CO., Respondent.**

No. 21764.

United States Court of Appeals
Ninth Circuit.

March 6, 1968.

Gary Green, NLRB, (argued), Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Arnold Ordman, Gen. Counsel, NLRB, Dominick L. Manoli, Associate Gen. Counsel, George B. Driesen, NLRB, Washington, D. C., Roy O. Hoffman, Director, NLRB, San Francisco, Cal., for appellant.

David Norwitt (argued), Neyhart & Grodin, San Francisco, Cal., for appellee.

Before POPE, DUNIWAY and CARTER, Circuit Judges.

DUNIWAY, Circuit Judge:

Petition to enforce an order of the National Labor Relations Board. The Board's Decision and Order are reported at 158 NLRB No. 42. Our examination of the record leads us to the conclusion that the trial examiner's findings of fact are "supported by substantial evidence on the record considered as a whole," (29 U.S.C. § 160(e)). The only substantial question concerns the Board's jurisdiction. We therefore state the facts upon which the Board rests jurisdiction.

Respondent is a California corporation, wholly owned by William O'Keeffe, Sr. and his wife. Their son is the manager. Its business is electrical construction, repair, and maintenance in the San Francisco Bay Area. It is a small business. There were, at the times in question, one other office employee and about ten shop employees. A few of the shop employees, known as wiremen, were represented, for collective bargaining, by Local 6, International Brotherhood of Electrical Workers, AFL-CIO. Seven others, called maintenance employees, were represented by Local 355 of the Sheetmetal Workers Union.

Respondent was a member of the San Francisco Electrical Contractors Association, Inc., which acted as collective bargaining agent for its members. The contract with Local 6, covering Respondent's wiremen, was negotiated by the Association. Until July, 1964, Local 6 represented all of the shop employees of the Respondent, under two agreements negotiated by the Association, one covering wiremen and one maintenance men. Thereafter, it represented only Respondent's wiremen, and Respondent made its own separate contract with Local 355 covering its maintenance men. This occurred because Respondent did not wish to meet Local 6's wage scale. The seven maintenance employees were

later discharged because they became or sought to become members of Local 6.

There is no finding as to whether any materials handled or sold by Respondent moved in interstate commerce, or whether any of its customers were in interstate commerce. There is, however, this finding:

> "Fischback and Moore, Incorporated, is a New York corporation * * * and it has a branch office in San Francisco, California. This firm is a member of the Association. The annual gross volume of the corporation for services performed in California exceeds $1,000,000. This corporation annually purchases goods valued in excess of $50,000 which are shipped to it from outside the State of California. The corporation, through its membership in the Association, is a party to a current collective bargaining agreement with Local No. 6, International Brotherhood of Electrical Workers, AFL–CIO."

This is the only finding relating to interstate commerce.

The theory of the complaint seems to be that the Association, as such, is an "employer" under the Act, and that if the business of one of its members "affects" interstate commerce, then the business of all members affects that commerce. In its brief, the Board somewhat refines this theory:

> "It is clear that respondent's discharge of these employees for joining Local 6 could have prompted a strike by that Local against respondent and, conceivably, against the Association of which it is a member. Under the circumstances, the law is plain that the Board had jurisdiction over respondent's operations, since it was a member of the Association. For it is the effect on interstate commerce of the employer's entire business, and not the effect on any single group of his employees that is determinative of the Board's jurisdiction under the Act."

■■ The Supreme Court has made it clear that, in the National Labor Relations Act, the Congress "intended to and did vest in the Board the fullest *jurisdictional* breadth constitutionally permissible under the Commerce Clause." NLRB v. Reliance Fuel Oil Corp., 1963, 371 U.S. 224, 226, 83 S.Ct. 312, 313, 9 L.Ed.2d 279. Discharge of union members for joining a union has been a frequent cause of strikes. It is not uncommon for a union to strike against one or more of a group of employers who deal with it collectively, or for all such employers, when one or more of them is thus struck, to lock out their employees. See, for example, NLRB v. Brown, 1965, 380 U.S. 278, 85 S.Ct. 980, 13 L.Ed.2d 839; NLRB v. Truck Drivers Union, etc. (Buffalo Linen), 1957, 353 U.S. 87, 77 S.Ct. 643, 1 L.Ed.2d 676; NLRB v. David Friedland Painting Co., 3 Cir., 1967, 377 F.2d 983; Detroit Newspaper Publishers Ass'n v. NLRB, 6 Cir., 1967, 372 F.2d 569; Publishers Ass'n of N. Y. C. v. NLRB, 2 Cir., 1966, 364 F.2d 293; NLRB v. Dalton Brick & Tile Corp., 5 Cir., 1962, 301 F.2d 886; NLRB v. Spalding Avery Lbr. Co., 8 Cir., 1955, 220 F.2d 673; Leonard v. NLRB, 9 Cir., 1952, 197 F.2d 435; id., 1953, 205 F.2d 355; Morand Bros. Beverage Co. v. NLRB, 7 Cir., 1951, 190 F.2d 576; id., 1953, 204 F.2d 529. Respondent's conduct in this case could well have provoked such collective action if the Board did not provide a remedy, as it has here. For jurisdictional purposes, it is immaterial whether such collective action would have been legal or illegal, a matter as to which we express no opinion. One of the clearly stated purposes of the Act is to afford a remedy through the Board, thus making such collective action, legal or illegal, less likely. See section 1 of the Act, 29 U.S.C. § 151. That such action would substantially affect interstate commerce is hardly open to argument. See Pearl Beer Distributing Co., etc. v. NLRB, 5 Cir., 1964, 331 F.2d 301, cert. denied, 379 U.S. 830, 85 S.Ct.

59, 13 L.Ed.2d 38; NLRB v. Sightseeing Guides & Lecturers Union, etc., 2 Cir., 1962, 310 F.2d 40. The Board had jurisdiction.

The order will be enforced.